## UNITED STATES v. CARENGELLA.

## UNITED STATES v. DI VITO et al.

### Nos. 10575, 10576.

United States Court of Appeals
Seventh Circuit.

July 15, 1952.

Rehearing Denied Aug. 22, 1952.

Writ of Certiorari Denied Nov. 10, 1952.

See 73 S.Ct. 179.

George M. Crane, Charles A. Bellows, Chicago, Ill., for appellants.

Otto Kerner, Jr., U. S. Atty., James P. Piragine, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Count 1 of the indictment herein charged Philip Tenerelli, Michael Carengella, William Di Vito and Silvio Blandi with unlawfully, willfully and knowingly receiving 25 cases of Sunnybrook whiskey which had been stolen from an interstate shipment, and with knowledge by said defendants that said whiskey had been stolen; and Count 2 charged them with possession of such whiskey, all in violation of 18 U.S.C.A. § 659. The case was tried to a jury. A severance was granted as to Tenerelli, who changed his plea to guilty and testified for the government. Motions for judgments of acquittal were denied and the jury rendered verdicts of guilty on both counts. Motions for new trials were denied and the three defendants who have appealed were sentenced to several concurrent sentences of 5 years.

A motor truck carrying a cargo of Sunnybrook whiskey, enroute from Louisville, Kentucky, to Iowa, was "hi-jacked" near Chicago Heights, Illinois, on February 23, 1951. Three men in an automobile forced the driver to stop the truck, blindfolded him, and stole the cargo. The driver was unable to give a description of the three men.

Philip Tenerelli at that time was the operator of a liquor store and bar in Chicago. He had known defendant Michael Carengella for some 6 or 7 months prior to February, 1951. On March 2, 1951, about 6:00 p.m., Carengella approached Tenerelli at the latter's place of business, offering to

sell him 25 cases of Sunnybrook whiskey at $25 a case, and Tenerelli agreed to purchase at that price. Carengella told Tenerelli to have $500 the following Monday, and asked whether he could immediately bring in the cases of whiskey,[1] and Tenerelli replied, "Go ahead, just bring it in the back." Tenerelli saw three men carrying in the cases of whiskey, one of whom was Carengella, but he did not know and at the trial could not identify the other two. Tenerelli testified that Carengella told him on the date when the whiskey was delivered "that they would be in Monday and pick up the money." Tenerelli testified that on Monday two persons whom he did not know came to his saloon; that at the time the place was dimly lighted and there were other patrons present, and that he was busy at the bar; that one of the two asked if he had the money, but he did not know which one made the inquiry; that he gave one of them $500 but again he did not know who it was that received the cash. He was unable to describe the physical appearance of the men or their wearing apparel, except that they were neatly dressed. He did say at the trial that he thought defendants Di Vito and Blandi were the persons who came into the saloon and that one of them received the $500. Tenerelli further testified that on the following Wednesday, pursuant to a previous arrangement, he paid Carengella $125, the balance of the agreed purchase price.

Tenerelli testified that on two subsequent occasions, Blandi visited him and inquired whether he had been questioned by the police; that after he replied in the negative, he was told by Blandi at one time, "You don't know me," and at the other, "Well, if they do, just you don't know me, that is all." He also testified that about two months before the trial Blandi inquired whether he was being questioned by the police, and that he again replied in the negative.

Di Vito testified at the trial he had been employed as a salesman for an aluminum awning company for more than a year prior to his arrest. There was no evidence of any previous police record. Di Vito denied any knowledge of or participation in the sale of whiskey, or that he ever had possession of same. Prior to the trial Di Vito and Blandi were interviewed on several occasions by police and F. B. I. agents, but they consistently maintained they were innocent of the charges.

Tenerelli stated on the stand that he expected a consideration for testifying, and that his attorney told him if he co-operated with the Assistant United States Attorney and testified for the government, he might receive probation. After the trial Tenerelli was placed on probation.

■ The evidence discloses that Carengella had possession and control of the 25 cases of whiskey on Friday, March 2, when he delivered same to Tenerelli. Di Vito and Blandi do not come into the picture until Monday, March 5, and then only as the result of the somewhat shaky identification made by Tenerelli at the trial. However, on this appeal we must consider Tenerelli's testimony as true.

Hence, the only testimony in the entire record that Di Vito received 25 cases of whiskey and had same in his possession on March 2, 1951, is that he and Blandi came into Tenerelli's saloon on March 5, and that one of the two said to Tenerelli, "Have you got the money?" and that one of the two received $500 from Tenerelli. The testimony against Blandi is the same, except that he subsequently asked Tenerelli questions as to police investigations as hereinbefore stated.

■ It is apparent there is no evidence on which to base a conviction of Di Vito and Blandi, unless they can be said to be aiders and abettors in connection with the receipt and possession of the whiskey by Carengella. Title 18 U.S.C.A. § 2 provides that whoever aids or abets another in the commission of an offense against the United States is guilty as a principal. Di Vito and Blandi were not charged in the indictment as aiders and abettors, but this is not necessary since aiders and abet-

---

1. It was stipulated that the 25 cases were part of the interstate shipment of Sunnybrook whiskey which had been stolen.

tors may be charged directly as principals. Pearson et al. v. United States, 6 Cir., 192 F.2d 681, 694; O'Brien v. United States, 7 Cir., 25 F.2d 90.

One is guilty as an aider and abettor when he consciously shares in any criminal act. Nye and Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919; United States v. Johnson, 319 U.S. 503, 518, 63 S.Ct. 1233, 87 L.Ed. 1546. The rule is expressed in the case of United States v. Williams, 341 U.S. 58, 64, 71 S.Ct. 595, 599, 95 L.Ed. 747, in this language: "Aiding and abetting means to assist the perpetrator of the crime. * * * To be present at a crime is not evidence of guilt as an aider or abettor. Hicks v. United States, 150 U.S. 442, 447, 450, 14 S. Ct. 144, 145, 147, 37 L.Ed. 1137. Cf. United States v. Di Re, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210".

We do not overlook the testimony of Tenerelli that at the time Carengella delivered the whiskey to him on March 2, he told him "that they would be in Monday and pick up the money." However, neither Di Vito nor Blandi were present at that conversation, and it is elementary that such testimony could not be used against them. On objection by their counsel the district court so ruled. Hence, in considering the case against Di Vito and Blandi that statement must be disregarded.

There is not a scintilla of evidence in this record that Di Vito and Blandi knew the whiskey was stolen. While mere possession of recently stolen property warrants the inference of guilty knowledge unless a satisfactory explanation of possession is made consistent with innocence, such an inference cannot apply here. There is no proof in the record that Di Vito and Blandi ever had any actual or constructive possession of the whiskey so that the inference might be effective against them. Surely the aiding and abetting statute does not give rise to the inference of knowledge on the part of Di Vito and Blandi that the whiskey was stolen. There is nothing in the record to show possession by Carengella on March 2, 1951, was also possession by Di Vito and Blandi. The paying of $500 by Tenerelli to Di Vito and Blandi three days after Carengella parted with the possession of the whiskey cannot be related back to show possession on March 2 by Di Vito or Blandi and that they had the guilty knowledge which the statute makes a necessary element of the crime.

Tenerelli's further testimony that Blandi made inquiry as to police inquiries was not binding upon Di Vito or Carengella who were not present. As to Blandi, it does no more than arouse the suspicion that he had a guilty conscience about something, but it takes something more than a robust suspicion to convict a defendant in a criminal case. United States v. Wainer, 7 Cir., 170 F.2d 603, 606. Association with guilty men may create suspicion, but it is not evidence of sufficient weight to convict under the statute in question. United States v. O'Brien, 7 Cir., 174 F.2d 341, 345. We think the judgments against Di Vito and Blandi must be reversed.

Carengella, arguing for a reversal of his conviction, attacks Tenerelli's testimony as of no inherent weight because he was an accomplice who expected to be benefited by testifying for the government. However, this was a matter of credibility for the jury. It was within the province of the jury to convict upon the unsupported testimony of an accomplice if the jury believed such evidence, and the court had given the proper cautionary instruction. O'Brien v. United States, 7 Cir., 25 F.2d 90, 91; United States v. Riedel, 7 Cir., 126 F.2d 81; United States v. Platt, 7 Cir., 156 F.2d 326. In the case at bar the district court instructed that the testimony of an accomplice is to be received by the jury with care, caution and suspicion.

Furthermore, there was testimony by police officers and F. B. I. agents that after Carengella's arrest, when they were passengers in an elevator on their way to the Chicago Office of the F. B. I., defendant Carengella stated he had sold 25 cases of whiskey to Tenerelli. As Carengella did not take the stand, this testimony was not denied. We must regard the gov-

ernment's evidence in the light most favorable to it, and we must accept same as true, together with all reasonable inferences which the jury may have drawn therefrom. United States v. Yeoman-Henderson, Inc., 7 Cir., 193 F.2d 867, 869; United States v. Kelley, 7 Cir., 186 F.2d 598, 600. We think the evidence is sufficient to support the verdict of guilty as to Carengella. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442.

It is urged in behalf of defendant Carengella that the district court committed reversible error by his extensive questioning of government witness Tenerelli, and his suggestions to the government's attorney. The court examined Tenerelli in some detail, including reference to the statement alleged to have been previously given by him to the United States Attorney. Counsel for Carengella claimed that the court's questions amounted to an impeachment of the witness.

 The influence of the trial judge on the jury is necessarily and properly of great weight. Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841. And jurors are ever watchful of words which fall from his lips. United States v. Levi, 7 Cir., 177 F.2d 833, 836. In conducting the trial the judge should be careful not to do or not to say anything which might have the effect of prejudicing the cause of either party before those whose duty it is to decide the facts. United States v. Levi, supra. It is entirely proper for the trial judge to ask questions of witnesses. In United States v. Glasser, 7 Cir., 116 F.2d 690, at page 704, this court said: "It is of course the duty of the trial judge to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties, and in so doing he has the authority to interrogate witnesses, * * *." But it is no part of the judge's duty to caution or advise the prosecuting attorney in order to supply some deficiency in the proof or testimony favorable to the government. Carengella claimed error because in the trial below, during the court's questioning of Tenerelli, the judge said, "You haven't told us about that. You had better go back and pick up, pick that

up, Mr. District Attorney, that is, about his previous conversation with Carengella."

 If this were a close case as to the guilt of Carengella, we might well conclude that substantial rights of defendant Carengella were prejudiced. However, under the rule stated in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557, we have concluded that the judgment rendered was not substantially swayed by the error, and under Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A., we must consider it as harmless error.

The judgments against the defendants Di Vito and Blandi are reversed with instructions to the district court to enter judgments of acquittal on both counts of the indictment. The judgment against Carengella is affirmed.