**Ralph W. SCOTT, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 12937.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 29, 1956.

Decided March 15, 1956.

---

Mr. Roger D. Fisher, Washington, D. C., (appointed by this Court) for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., and Messrs. Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee. Messrs. Carl W. Belcher and Harold H. Greene, Asst. U. S. Attys., also entered appearances for appellee.

Before PRETTYMAN, FAHY and BASTIAN, Circuit Judges.

### PRETTYMAN, Circuit Judge.

Appellant Scott was indicted for robbery, tried by a jury, convicted, and sentenced to imprisonment. He was tried with a co-defendant named Pell, who was also convicted and who was clearly guilty, having been apprehended, gun in hand, by an extraordinarily courageous delivery boy at the scene of the robbery. Several other eyewitnesses to the crime also identified Pell as the gunman. Scott was apprehended later in his own apartment, located on an alley which entered the street about half a block from the scene of the robbery. It was established that Scott and Pell had known each other for several years and that they had been drinking together in Scott's apartment during the early part of the day of the robbery. Scott did not participate in the actual holdup. The theory of the Government was that Scott was a lookout for Pell while the latter held up a retail liquor store.[1]

The evidence against Scott, briefly described, was the following: (1) He was seen across the street from the liquor store with Pell about five minutes before the holdup. (2) When Pell was arrested his wallet contained a piece of paper upon which appeared Scott's address with the notation "Enter thro⌐⌐h the rear."

(3) When the police entered Scott's apartment Scott denied that he had ever known a Mr. Pell and also said that he "had been home all day." (4) On the top of a dresser in Scott's apartment the police found a pair of gun grips which "matched pretty good" Pell's gun. The Government maintained that the sum total of the foregoing circumstances was sufficient to sustain a verdict of guilty.

The evidence and argument on the other side of the picture was as follows: (1) Within a few minutes of the robbery Scott was seen half a block from the scene at the corner of the alley which led to his apartment. This indicated, he argues, that he left Pell and started for home instead of acting as a lookout for a robbery which he knew was going to occur. (2) The liquor store was on Thirteenth Street, Northwest, a wide, busy traffic thoroughfare, and the time of the robbery was seven-thirty in the evening. No evidence placed Scott nearer the scene than across the street and, indeed, some little distance down the block. He argues that a lookout would hardly have been posted across this street from the scene of the contemplated crime. (3) Evidence showed that Scott and Pell had been drinking in Scott's apartment the morning of the day of the robbery; that Scott's employer owed him some money; that Pell undertook to collect that money; that Scott gave Pell his address on a slip of paper so that Pell could find his way back to the apartment; and that the additional notation was because the apartment was a rear apartment and the nearest entrance was on the alley instead of on the street side of the apartment house. (4) Scott argues that his denial to the police that he knew Pell was a natural human reaction to a sudden inquiry by the police about a person whom Scott knew to have a criminal record. (5) In respect to Scott's statement

---

1. In its brief here the Government suggests that Scott might have been convicted upon an inference that the original idea of the crime was his. However the instruction of the court to the jury placed the matter squarely upon the lookout theory, indicating that this was the basis upon which the Government had presented its case, and upon oral argument in this court the Government stood upon the lookout theory. There was in fact no evidence of any advice of any sort from Scott to Pell.

to the police that he had been home all day, the evidence showed that he had been off from his regular job that day, allegedly sick. He argues that in that sense he was "home all day".

The sum total of the foregoing evidence undoubtedly is sufficient to create grave suspicion that Scott advised, incited or connived at the offense or aided or abetted Pell.[2] But grave suspicion is not enough. It seems to us that upon an objective consideration any reasonable man must necessarily have had reasonable doubt as to Scott's participation. Therefore the District Court should have granted the motion for judgment of acquittal.[3] Its judgment is therefore reversed and the case remanded with a direction to enter a judgment of acquittal.

Reversed and remanded.

2. 31 Stat. 1337 (1901), D.C.Code § 22-105 (1951).
3. Curley v. United States, D.C.Cir., 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850; Cooper v. United States, D.C.Cir., 1954, 94 U.S.App. D.C. 343, 218 F.2d 39.