John L. BAILEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21428.

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1968.

Decided March 7, 1969.

Mr. Alan C. Campbell, Washington, D. C., with whom Mr. Bernard J. Long, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. James R. Phelps, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Earl J. Silbert, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and ROBINSON, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was tried in the District Court on a single-count indictment charging robbery [1] of an employee of the Center Market Provision Company. The prosecutive theory was that he aided and abetted the principal assailant, who remains unknown, in the commission of the crime. At the close of the Government's case in chief, appellant moved unsuccessfully for a judgment of acquittal [2] on the ground that the proof did not establish a prima facie case against him. This motion he renewed, and the court again denied, after all the evidence was in. The jury returned a verdict finding appellant guilty as charged, and from the conviction this appeal was taken.

Appellant contends, among other things,[3] that the denial of his motion was error. He insists anew that the evidence was legally insufficient to enable a jury to conclude beyond a reasonable doubt that he participated in the commission of the offense. We agree and, without reaching any other issue tendered by appellant,[4] accordingly reverse the conviction.

I

Appellant spent some of the afternoon of September 26, 1966, the date of the robbery, in the vicinity of the Center Market Provision Company, a wholesale meat distributor. He was first seen across the street from the company's place of business "shooting craps" with a short, stocky man—the "other man" in the case, who was to become the actual robber. At one point appellant left the other man but returned minutes later. Appellant subsequently left him again to join several men in a game of "five-and ten-cent crap" on a parking lot in front of the Center Market building. When the game terminated, appellant re-

---

1. "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than six months nor more than fifteen years." D.C.Code § 22–2901 (1967 ed.), since amended (Supp. I 1968).

2. F.R.Crim.P. 29(a).

3. He also maintains that the trial judge committed prejudicial error by permitting the Government to use two prior criminal convictions for the purpose of impeachment, and in his instructions to the jury. We find it unnecessary to reach these issues.

4. See note 3, *supra*.

joined the other man, who in the meanwhile had remained across the street, and somewhat later they walked over to the parking lot and stood by a truck owned by Center Market. The offense for which appellant was prosecuted took place shortly thereafter.

Wilson C. Lawson, Jr., a part-time bookkeeper for Center Market, was the victim of the robbery. Each day he checked in the cash receipts of Center Market's drivers and prepared the company's bank deposit. His regular routine was to take the deposit with him when he left and to deliver it to a bank, at which he was employed full-time, on the following day.

As Lawson left Center Market on September 26, he carried a paper bag containing a deposit of approximately $4,200.[5] He noticed appellant and the other man by the truck, but attached no significance to that circumstance. While Lawson stood on a loading platform locking the door, a driver whom he recognized came out of another building and conversed with him briefly. A second truck driver was sitting in a car parked facing the platform.

Lawson walked down the platform steps toward his car, which was parked next to the truck where appellant and the other man were. When Lawson reached his car, the other man took the bag with the deposit at gunpoint. Appellant, just prior to the holdup, had walked away from the gunman toward the curb of the street, and was then about ten feet away. The man who had conversed with Lawson yelled "Look, they're robbing him," and both appellant and the other man ran away in the same direction. The two truck drivers attempted to follow but lost them. Appellant was subsequently apprehended, but the other man was never identified or caught.

## II

■■■ Appellant's conviction must stand, if at all, on the premise that he aided and abetted[6] the unknown robber, for the record is barren of proof that appellant was an active perpetrator of the offense.[7] And the sufficiency of the Government's evidence to sustain a conviction on that premise became an issue to be tested by familiar rules when the motion for judgment of acquittal was made. "The true rule * * * is that a trial judge, in passing upon a motion for directed verdict of acquittal,[8] must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."[9] For that purpose, the judge "must assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom."[10] Should the judge determine that prudent jurors

5. Lawson carried about $1,900 in cash, $2,300 in checks, and some change.

6. "In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be." D.C.Code § 22–105 (1967 ed.).

7. In the District of Columbia, an aider and abettor is prosecuted as a principal. D.C.Code § 22–105 (1967 ed.). The conviction of the principal offender is not prerequisite to conviction of the aider and abettor. Gray v. United States, 104 U.S.App.D.C. 153, 154, 260 F.2d 483, 484 (1958).

8. F.R.Crim.P. 29(a) has abolished the motion for directed verdict in criminal cases and substituted the motion for judgment of acquittal.

9. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

10. *Id.* See also Nye & Nissen v. United States, 336 U.S. 613, 618–620, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

might have no such doubt, or might disagree as to its existence, the matter lies within the jury's province and the motion must be denied.[11] But, very importantly,

> "Guilt, according to a basic principle in our jurisprudence, must be established beyond a reasonable doubt. And, unless that result is possible on the evidence, the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence." [12]

■ Appellant's conduct, as portrayed in the view most favorable to the Government, amounted to presence at the scene of the crime, slight prior association with the actual perpetrator, and subsequent flight.[13] A *sine qua non* of aiding and abetting,[14] however, is guilty participation [15] by the accused. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " [16] The crucial inquiries in this case relate to the legal capabilities of the evidence to sustain a jury determination that appellant collaborated to that degree in the robbery.

■ An inference of criminal participation cannot be drawn merely from presence; [17] a culpable purpose is essential.[18] In Hicks v. United States,[19] the Supreme Court recognized that the accused's presence is a circumstance from which guilt may be deduced if that presence is meant to assist the commission of the offense or is pursuant to an understanding that he is on the scene for that purpose. And we have had occasion to say that "[m]ere presence would be enough if it is intended to and does aid the primary actors." [20] Presence is thus equated to aiding and abetting when it is shown that it designedly encourages the

---

11. Cooper v. United States, 94 U.S.App. D.C. 343, 346, 218 F.2d 39, 42 (1954); Curley v. United States, *supra*, note 9, 81 U.S.App.D.C. at 392–393, 160 F.2d at 232–233, and authorities therein cited.

12. Cooper v. United States, *supra*, note 11, 94 U.S.App.D.C. at 346, 218 F.2d at 42.

13. We hereinafter examine the evidentiary significance of each of these circumstances, both singly and in combination.

14. Conduct making one a party to crime may consist of (a) "advising, inciting, or conniving at the offense" or (b) "aiding or abetting the principal offender." D.C.Code § 22–105 (1967 ed.). Clearly there was no evidence here that could penetrate the first category, nor did the Government rely upon any theory other than aiding and abetting.

15. Hicks v. United States, 150 U.S. 442, 449–451, 14 S.Ct. 144, 37 L.Ed. 1137 (1893); Long v. United States, 124 U. S.App.D.C. 14, 20–21, 360 F.2d 829, 835–836 (1966); Stevens v. United States, 115 U.S.App.D.C. 332, 334, 319 F.2d 733, 735 (1963); Kemp v. United States, 114 U.S.App.D.C. 88, 89, 311 F.2d 774, 775 (1962); United States v. Carengella, 198 F.2d 3, 7 (7th Cir.), cert. denied 344 U.S. 881, 73 S.Ct. 179, 97 L.Ed. 682 (1952); Johnson v. United States, 195 F.2d 673, 675–676 (8th Cir. 1952). See also the cases cited *infra* note 39.

16. Nye & Nissen v. United States, *supra* note 10, 336 U.S. at 619, 69 S.Ct. at 769, quoting United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938).

17. United States v. Williams, 341 U.S. 58, 64 n. 4, 71 S.Ct. 595, 95 L.Ed. 747 (1951); Hicks v. United States, *supra* note 15, 150 U.S. at 449–451, 14 S.Ct. 144, 37 L.Ed. 1137; Kemp v. United States, *supra* note 15; United States v. Minieri, 303 F.2d 550, 557 (2d Cir.), cert denied 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962); Newsom v. United States, 335 F.2d 237, 239 (5th Cir. 1964); United States v. Carengella, *supra* note 15, 198 F.2d at 7; Ramirez v. United States, 363 F.2d 33, 34–35 (9th Cir. 1966). See also United States v. Di Re, 332 U.S. 581, 587, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948). And see the cases cited *infra* note 39.

18. See the cases cited *supra* note 15.

19. *Supra* note 15, 150 U.S. at 447–450, 14 S.Ct. 144, 37 L.Ed. 1137.

20. Long v. United States, *supra* note 10, 124 U.S.App.D.C. at 20, 360 F.2d at 835.

perpetrator,[21] facilitates the unlawful deed[22]—as when the accused acts as a lookout[23]—or where it stimulates others to render assistance to the criminal act.[24] But presence without these or similar attributes is insufficient to identify the accused as a party to the criminality.[25] And this case is devoid of evidence, beyond what the previous associative acts and the subsequent flight might themselves reflect, that appellant's presence on the scene was designed to in any way sanction or promote the robbery.

### III

■ The Government urges the efficacy of appellant's presence when it is coupled with his association with the perpetrator on the date of and shortly prior to the robbery. But an accused's prior association with one who is to become a criminal offender, even when coupled with the accused's later presence at the scene of the offense, does not warrant an inference of guilty collaboration.[26] Moreover, here the uncontradicted evidence shows that each of appellant's several brief meetings with the eventual robber occurred on the street or the parking lot in the open view of others, including the men with whom appellant fraternized for some time in a dice game[27]—evidence becoming even more eloquent when scrutinized in the light of what was not shown at trial. The Government's proof did not expose appellant as a planner of the robbery, or as an aide or lookout in its consummation,[28] or as one who shared in its proceeds, or even as one who knew the unidentified robber. In these circumstances, we cannot say that reasonable jurors could find a taint of criminality in appellant's limited association with him.

■ The Government contends finally that the strength of its case against appellant was enhanced by the fact that appellant fled the scene after the crime was committed. The evidentiary value of flight, however, has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as an indicium of guilt.[29] We no longer hold tenable the notion that "the wicked flee when no man pursueth, but the

21. People v. Villa, 156 Cal.App.2d 128, 318 P.2d 828, 833–834 (1957).

22. Story v. United States, 57 App.D.C. 3, 4, 16 F.2d 342, 343, 53 A.L.R. 246 (1926), cert. denied 274 U.S. 739, 47 S.Ct. 576, 71 L.Ed. 1318 (1927).

23. People v. Ellhamer, 199 Cal.App.2d 777, 18 Cal.Rptr. 905, 908 (1963).

24. United States v. Garguilo, 310 F.2d 249, 253 (2d Cir. 1962).

25. E. g., Stevens v. United States, supra note 15, 115 U.S.App.D.C. at 334, 319 F.2d at 735; Kemp v. United States, supra note 15.

26. Hicks v. United States, supra note 15, 150 U.S. at 449–451, 14 S.Ct. 144, 37 L.Ed. 1137; Kemp v. United States, supra note 15; Newsom v. United States, supra note 17, 335 F.2d at 238–239; Glenn v. United States, 271 F.2d 880, 883 (6th Cir. 1959). See also United States v. Di Re, supra note 17, 332 U.S. at 593, 68 S.Ct. 222, 92 L.Ed. 210. And see the cases cited infra note 39.

27. Compare United States v. Di Re, supra note 17, 332 U.S. at 593, 68 S.Ct. 222.

28. The Government's aiding and abetting theory, as argued to the jury, was that appellant either planned the robbery or functioned as a lookout. But the record is devoid of evidence disclosing circumstances that could give that sort of color to appellant's conduct. There is no trustworthy indication that appellant was a party to the scheme to rob, and the Government did not ask any of its eyewitnesses to try to elucidate appellant's behavior as he walked away from the unidentified robber immediately before the crime took place.

29. Wong Sun v. United States, 371 U.S. 471, 483–484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Starr v. United States, 164 U.S. 627, 631–632, 17 S.Ct. 223, 41 L.Ed. 577 (1897); Allen v. United States, 164 U.S. 492, 498–499, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); Hickory v. United States, 160 U.S. 408, 416–421, 16 S.Ct. 327, 40 L.Ed. 474 (1896).

righteous are as bold as a lion." [30] The proposition that "one who flees shortly after a criminal act is committed or when he is accused of committing it does so because he feels some guilt concerning that act" [31] is not absolute as a legal doctrine "since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." [32]

■ With cautious application in appreciation of its innate shortcomings, flight may under particular conditions be the basis for an inference of consciousness of guilt.[33] But guilt, as a factual deduction, must be predicated upon a firmer foundation than a combination of unelucidated presence and unelucidated flight. Here there was no evidentiary manifestation that the appellant was prompted by subjective considerations related in any wise to the crime.[34] Moreover, as the evidence disclosed, appellant had several convictions prior to the affair in suit,[35] and these might well have dictated what seemed to him to be best.

Absent anything more, there was no more basis for attributing his flight to complicity in the robbery than to a purpose consistent with innocence.

If we consider presence, association and flight separately, the Government's case quite obviously did not qualify for submission to the jury. And while "the jury must take the Government's case as a whole and determine whether as a whole it proves guilt beyond a reasonable doubt," [36] any effort to repair the Government's fragmented case still leaves a prosecution constructed from evidence which is pregnant with the probability that appellant was an innocent bystander. After all, it shows only that he openly gambled with the eventual robber, talked to him, and stood with him beside the truck at intermittent periods during the afternoon. Suddenly when the robbery victim appeared on the scene with the bag of money, it was the unidentified man who pointed a gun at him and grabbed the bag. Appellant, prompted by reasons which only random speculation could summon, ran away in the midst of shouts that "they" had committed a robbery.[37] The admonition that "innocent

---

30. Alberty v. United States, *supra* note 29, 162 U.S. at 511, 16 S.Ct. at 868.

31. Miller v. United States, 116 U.S.App. D.C. 45, 48, 320 F.2d 767, 770 (1963).

32. Alberty v. United States, *supra* note 29, 162 U.S. at 511, 16 S.Ct. at 868.

33. See Miller v. United States, *supra* note 31, 116 U.S.App.D.C. at 48–49, 320 F.2d at 770–771.

34. There was no evidence of such things as manifest cooperation, division of the spoils, or the like, activities which have been factors in decisions reaching the contrary conclusion under their particular circumstances.

35. This came out during colloquy as to whether the Government would be allowed to use the convictions to impeach appellant, who testified in his own behalf. See Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). Appellant was convicted of grand larceny in 1951, assault on a police officer in 1959, and attempted housebreaking in

1962. The Government was permitted to and did use the grand larceny and attempted housebreaking convictions for purposes of such impeachment.

36. Hunt v. United States, 115 U.S.App. D.C. 1, 3, 316 F.2d 652, 654 (1963).

37. Our dissenting colleague emphasizes the word "they" in the shout but we are unable to attach particular significance to it. The witness who made that outcry testified that appellant had walked away from the gunman prior to the holdup and explained appellant's role thusly:
   Q. Did Mr. Bailey at any time ever go over to Mr. Lawson?
   A. Not as I knows of. Only thing I seen was both running down the street.
   Q. You ever see Mr. Bailey do anything to Mr. Lawson?
   A. No, sir.
   Q. You ever see Mr. Bailey anytime snatch anything out of Mr. Lawson's hands?
   A. No, sir.
   Q. The only thing you saw Mr. Bailey do was run up the street?

people caught in a web of circumstances frequently become terror-stricken" [38] carries its usual force here.

In the annals of the case law we find well reasoned decisions exonerating from conviction persons accused in circumstances not significantly divergent from those appearing here.[39] We hold concordantly that the Government's ambiguous evidence against appellant left too much room for the jury to engage in speculation, with the result that the motion for judgment of acquittal was erroneously denied. The totality of that evidence could only conjecturally support a finding that appellant "associate[d] himself with the [criminal] venture, that he participate[d] in it as in something that he wish[ed] to bring about, [and] that he [sought] by his action to make it succeed." [40] The circumstances may arouse suspicions but, as we have counseled, even "grave suspicion is not enough." [41]

We reverse the judgment of appellant's conviction and remand the case to the District Court with direction that a judgment of acquittal be entered.

Reversed and remanded.

BASTIAN, Senior Circuit Judge (dissenting):

I obtain from the record a different picture from that perceived by my colleagues. They agree with appellant's contention that the evidence was legally insufficient to enable a jury to conclude beyond a reasonable doubt that appellant participated in the commission of the offense. Thus, they decide that the denial of appellant's motions for judgment of acquittal was error. I emphatically disagree.

Several legal principles are applicable The first is that an appellate court, reviewing a conviction assailed because of insufficiency of the evidence, must view that evidence in the light most favorable to the Government and make full allowance for the jury's right to assess the credibility of witnesses and to draw justifiable inferences from the evidence. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967).

Equally applicable to the instant case is the appropriate legal standard governing appellate review of a denied motion for judgment of acquittal. In this jurisdiction that standard has been clearly delineated in the leading case of Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), as follows:

The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon

---

A. That is all.
This coincides with all else said at trial.
We give due weight to otherwise admissible spontaneous exclamations for whatever factual contributions they can make. Jackson v. United States, 123 U.S.App. D.C. 276, 277–278, 359 F.2d 260, 261– 262 (1966). But here the witness' testimony bares his exclamation that "they are robbing him" as a personal characterization of appellant's conduct which in our view does not fit the actual facts.

38. Cooper v. United States, *supra* note 12, 94 U.S.App.D.C. at 345, 218 F.2d at 41.

39. United States v. Paige, 324 F.2d 31, 32 (4th Cir. 1963); Vick v. United States, 216 F.2d 228, 232–233 (5th Cir. 1954); Jones v. Commonwealth, 208 Va. 370, 157 S.E.2d 907, 910 (1967). See also Williams v. United States, 361 F.2d 280, 281– 282 (5th Cir. 1966).

40. Nye & Nissen v. United States, *supra* note 10, 336 U.S. at 619, 69 S.Ct. at 770, 93 L.Ed. 919.

41. Scott v. United States, 98 U.S.App. D.C. 105, 107, 232 F.2d 362, 364 (1956).

which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. In a given case, particularly one of circumstantial evidence, that determination may depend upon the difference between pure speculation and legitimate inference from proven facts. The task of the judge in such case is not easy, for the rule of reason is frequently difficult to apply, but we know of no way to avoid that difficulty. (footnote omitted)

160 F.2d at 232–233.

Carrying a bag which contained about $5,100.00 in cash and checks, a bookkeeper of the Center Market Provision Company left the Company office, intending to deposit the funds in the bank. Appellant and an unidentified man were standing near the Company's truck and the employee's automobile. As the employee was about to put the bag in the trunk of his car, the unidentified man drew his gun and took the bag. Appellant, standing at this time only a short distance away, made no move to run until an eyewitness shouted, "They are robbing him!" Thus alerted by the eyewitness' cry that *they* were robbing the victim, *both* the unidentified gunman and appellant ran away *together*. They were pursued (but kept running together) for some three or four blocks when they outdistanced their pursuers. They did not separate during these three or four blocks. Appellant was later arrested, but the unidentified gunman was never caught, nor was the money recovered. Added to these facts, the record reveals that appellant had been associated with the unidentified gunman for an appreciable period of time immediately preceding the crime. Then appellant was seen joining the robber just before the robbery, and, at the moment of the crime, appellant was no more than ten feet from the actual spot of the holdup.

In Crawford v. United States, *supra*, we stated that, in order to withstand a motion for acquittal, "the government need only introduce enough evidence to 'sustain' a conviction, i. e., such evidence that reasonable persons *could* find guilt beyond reasonable doubt. It is not a requirement that the evidence *compel*, but only that it is capable of or sufficient to persuade the jury to reach a verdict of guilt by the requisite standard." Id. at 334. Thus does our inquiry focus on the question of whether the government introduced enough evidence to "sustain" a conviction of appellant's aiding and abetting, such evidence, with inferences drawn appropriately in the government's favor, that reasonable persons *could* find guilt of aiding and abetting beyond a reasonable doubt.

Judge Hand's statement in United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938), on the requirements necessary for one to be an aider and abettor was repeated almost verbatim by the Supreme Court in Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). There, at 619, 69 S.Ct. at 769, the Court declared, "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "

In this case, prior to the commission of the crime, appellant was closely associated with the actual perpetrator and was with him immediately before the robbery. Furthermore, appellant was present at the scene of the crime. Finally, he ran away together with the other man after the robbery. Yet, my colleagues decide that only by impermissible conjecture could the evidence support a finding that appellant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." Nye & Nissen v. United States, *supra*.

**1118**

I, on the other hand, state forcefully that the totality of this evidence, when considered in the light most favorable to the prosecution, is surely adequate, yea, more than adequate, to meet the governing standard, " * * * [that] a reasonable mind might fairly conclude guilt beyond a reasonable doubt * * * [and if the trial judge] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter." Curley v. United States, *supra*. To the same effect is Crawford v. United States, *supra*.

In the District Court, an experienced trial judge denied appellant's motions for judgment of acquittal and allowed the case to go to the jury. I submit that this was properly done and that the resulting jury verdict should be allowed to stand. I see no justification for my colleagues setting aside appellant's conviction.

So I dissent.