**UNITED STATES of America,**

v.

**Rudolph D. PRESTON.**

**Crim. No. 2273–70.**

United States District Court, District of Columbia.

Sept. 2, 1971.

Philip L. Cohan, Asst. U. S. Atty., for the United States.

Peter Kolker, Washington, D. C., for defendant.

RICHEY, District Judge.

## MEMORANDUM OPINION

The defendant, Rudolph D. Preston, was indicted in one count for first degree burglary [1] in connection with a burglary which allegedly took place on June 27, 1970, in the first floor apartment of Everett and Jewl Dodd. Defendant is alleged to have entered the window of the bedroom of the apartment of Mr. and Mrs. Jewl Dodd. At the close of the government's case, the defendant moved for a Judgment of Acquittal. This Court granted the Motion for a Judgment of Acquittal at the time it was made, based on the findings of fact and conclusions of law hereinafter set forth in this Opinion.

■ The government produced four witnesses during the presentation of its case. The first witness to testify was an expert in the field of hair and fiber analysis. The government introduced into evidence a pair of tennis shoes, which allegedly belonged to the defendant and a small rayon carpet, which was stated to have come from the complainant's bedroom. In addition, several microscope slides containing fibers from the bedroom carpet and fibers extracted from the defendant's tennis shoes were admitted. On direct examination, the expert testified that following microchemical analysis of the fibers, he concluded that the fibers from both sources (i. e. the rug and the tennis shoes) were delustred rayon fibers. He stated that the tests he performed on the fibers from both sources could not conclusively establish that the fibers on the tennis shoes were from the carpet in complainant's bedroom. During cross-examination, the expert testified that the rayon fibers from the bedroom carpet were capable of being transferred from that carpet to other carpets in the house, the floor in the apartment, or even the floor in the stairwell of apartment building where the complainants resided. Finally, he testified that it was possible for the defendant to have gotten rayon fibers from the bedroom carpet on the bottom of his tennis shoes without having actually stepped on it, since the fibers were capable of being transferred to other areas in the apartment.

The next two witnesses to testify were the complainants. Mrs. Jewl Dodd stated that she was awakened by a call from a policeman outside her bedroom window. She admitted the officer through

1. D.C.Code sec. 22–1801(a) (Supp. IV, 1971).

the kitchen door, at which time she was informed that the apartment may have been burglarized. She stated that the officer then went into the livingroom, where her husband was sleeping on the floor, and then out the door into the stairwell. Mrs. Dodd testified that she neither heard nor saw anyone come into her bedroom; however, she indicated that before she retired the window in the bedroom was closed and the screen was intact. Mr. Everett Dodd testified that he was sleeping on the living room floor, and that he neither heard nor saw anyone enter or leave the apartment. He also stated that he had locked all four locks on the living room door, which opens into the stairwell, before he retired for the evening.

The next government witness was a police officer who testified that he came to the address in answer to a radio-run that a "burglar" was in the vicinity. He stated that upon noticing the torn screen and open window in the back of the Dodd's apartment, he called to find out if anyone was home. He stated that Mrs. Dodd answered, and after he questioned her about the condition of the window and the screen, he decided to investigate further. Mrs. Dodd admitted him through the back door, and he proceeded into the living room, where it was discovered that the door opening into the stairwell was unlocked. The officer then went into the stairwell, where he noticed movement on the second floor landing. He climbed the stairs and found the defendant lying face down on the landing. The officer asked the defendant what he was doing. Not satisfied with defendant's answer, the officer arrested him. He took the defendant into the Dodd's apartment, where they were asked whether they recognized the defendant. Neither complainant knew the defendant. The defendant was then escorted out of the apartment, taken down to the precinct and held on suspicion of burglary. The officer testified that the defendant's tennis shoes and a piece of the bedroom carpet were obtained later for the microchemical analysis. He also stated that the tests for fingerprints proved to be negative.

Following the close of the government's case, as just outlined, the defense made its Motion for a Judgment of Acquittal.

This Court holds that the government's evidence is barely sufficient to arouse a suspicion that Preston committed the offense, and suspicion is not enough to permit the case to go to the jury.[2] The defendant's conduct, viewed in the light most favorable to the government, amounts to presence on the second floor landing in the stairwell of the complainant's apartment building. The evidence also tends to show that a window screen in the complainant's apartment had been cut and that the apartment had been unlocked from the inside. *The only evidence which tended to link the defendant with presence in the complainant's apartment was evidence of rayon fibers on his tennis shoes.* However, the expert testimony clearly indicates that the fibers were capable of being transferred to other areas in the complainant's apartment or the stairwell. Therefore, it is quite possible that the fibers got on the tennis shoes when the police brought the defendant into the apartment immediately after his arrest in the stairwell. The Court believes that the jury would have to speculate whether the fibers adhered to defendant's tennis shoes prior to his being brought into the complainant's apartment by the police. The Court concludes that the fiber analysis is insufficient to link the defendant with presence in the complainant's apartment prior to his arrest.

In two analogous cases, Hiet v. United States [3] and Borum v. United States,[4] the United States Court of Appeals for the District of Columbia held that fingerprint evidence could not serve as the basis for drawing an inference that the defendant was present at the scene of the offense at the time of the offense, unless the government could prove that there was no innocent method by which the fingerprints could have been deposited at the location prior to or after the time of the offense.[5] In the case at bar no fingerprints of the defendant were found in the complainant's apartment; however, rayon fibers were found on the bottom of his tennis shoes. The Court believes that the fibers could have gotten on the tennis shoes quite innocently by virtue of the fact that the police escorted the defendant through the apartment after they arrested him.

Finally, it is this Court's carefully considered opinion that the defendant's mere presence at the scene of the offense, without some evidence of actual perpetration of the offense is insufficient to sustain a verdict of guilty. As authority for this proposition, the Court relies on Bailey v. United States,[6] which held that inference of criminal participation cannot be drawn merely from the defendant's presence on the scene, and which requires that a culpable purpose be established.[7] While the Court realizes that Bailey v. United States, *supra*, and the cases cited by that opinion apply mainly to aiding and abetting. However, the Court sees no reason why the same rationale used in those cases should not

be extended to and applied to the instant case. The Court finds the government's evidence in this case to be far less substantial, than was the evidence in *Bailey*. Accordingly, the defendant's Motion for a Judgment of Acquittal following the close of the government's evidence was granted.

3. 124 U.S.App.D.C. 313, 365 F.2d 504 (1966). In *Hiet* the government sought to prove that the defendant's fingerprints on the complainant's car demonstrated that the defendant had broken into the car and stole the equipment therein. Since the government failed to show, however, that the defendant could not have had access to the car on previous days, and thus could have innocently left his print on the car, the inference could not properly be drawn.

4. 127 U.S.App.D.C. 48, 380 F.2d 595 (1967). In *Borum* the court held that the government was not entitled to an inference from the fact that the defendant's fingerprint was on a glass jar, absent some proof that the print could not have innocently been placed on the jar at some earlier time.

5. *Id.*

6. 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969).

