**Kevin LEONARD, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 88–736 & 91–215.**

District of Columbia Court of Appeals.

Argued Jan. 9, 1992.
Decided Feb. 7, 1992.

S. Pamela Thomas, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Henry K. Kopel, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Roy W. McLeese, III and June M. Jeffries, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Kevin Leonard appeals his convictions by a jury of second degree murder while armed, D.C.Code §§ 22–2401, –3202, assault with intent to kill while armed, *id.* §§ 22–501, –3202, malicious destruction of property, *id.* § 22–403, and carrying a pistol without a license. *Id.* § 22–3204. He contends that the trial judge erred by instructing the jury on aiding and abetting in the absence of a factual predicate. We affirm.

---

## I

On November 23, 1986, the decedent, Elliott Curtis, and Valencia Turner were sitting inside a parked car near the intersection of Wheeler Road and Wahler Place, Southeast. At approximately 6:25 p.m., a blue car pulled up in front of their car. Within minutes, shots were fired. Ms. Turner was only slightly injured, but Mr. Curtis died as a result of the gunshot wounds. At trial, the government's evidence showed that the shooting arose from efforts of Bobby Holton, a cousin of the co-defendant Torrence Holton, and others (including Torrence Holton) to retrieve his car after having swapped it temporarily for the use of a truck owned by Alvin Gaskins.[1]

The government's key witness, Myra Teeter, testified that Mr. Curtis had stopped the car near the corner of Wheeler Road and Wahler Place. Thereafter she saw a blue car drive up fast and park in front of the car occupied by Mr. Curtis and Ms. Turner. Ms. Teeter, standing on the passenger side of the car occupied by Mr. Curtis, saw appellant get out of the blue car on the driver's side and walk over to the driver's side of the other car and begin talking with Mr. Curtis. She could not hear their conversation, and she saw nothing in appellant's hands. Meanwhile, Torrence Holton got out of the blue car on the passenger side, with a gun pointing down in his hand at his side. He walked to the back of the blue car, so that he was standing in front of the other car, and began shooting into the car where Mr. Curtis and Ms. Turner were sitting. Torrence Holton moved around to the passenger side of the car, opened the door and fired another shot. While Torrence Holton was shooting, appellant drew a gun and fired inside the car on the driver's side. After the shooting was over, the two men got back into the blue car and drove off.[2]

Appellant's defense was innocent presence. Curtis Freeman, a "good friend" of Mr. Curtis, the decedent, testified that he saw appellant walk toward Mr. Curtis, stop, raise his hands and back away from the car as Torrence Holton ran to the driver's side of the car occupied by Mr. Curtis and Ms. Turner, and began shooting. He did not see appellant with a gun. He testified that when Torrence Holton began shooting, appellant ran back to the blue car and attempted to close the passenger door and drive away, but Torrence Holton stopped him by saying "Don't move this motherfucking car." After the shooting, Torrence Holton got into the car and the two men drove away. Mr. Freeman later saw Mr. Curtis get out of the car and fall down; he saw a gun in Mr. Curtis' hand.[3]

After the close of all the evidence, the trial judge reviewed proposed instructions with counsel, indicating, among other things, that he would give an aiding and abetting instruction. Both defense counsel

1. Other evidence indicated that around 5 p.m. Mr. Curtis, Ms. Turner and another woman drove to Maryland to get Mr. Gaskins' truck. During that time Mr. Curtis placed a revolver under the driver's seat.

2. Hattie Barber testified that while talking to Mr. Curtis, Mr. Curtis had looked up and said "Oh shit. Oh shit." Ms. Barber saw a man holding a gun, standing near the front driver's side of the car. As she left the area she heard gunshots, which she thought had come from more than one gun because one sounded louder than others. According to Ms. Barber, there was a handgun on the console of the car in which Mr. Curtis was sitting, but she did not see him use the gun.

3. Karen Johnson, the mother of appellant's two children, with whom he was living, testified that Mr. Curtis and appellant were "good friends," and that she and Torrence Holton had grown up together. When appellant left the house on the day of the shooting, between 5 p.m. and 5:30 p.m., she said he did not have a gun. She admitted that appellant had a blue car, and that she had not searched him or the car to see if he had a gun when he left the house.

The other two defense witnesses were: (1) Daniel King, who testified that he had spoken with Mr. Curtis for about five minutes before the blue car had arrived, and that he recognized Torrence Holton as the passenger, and recalled that Holton got out of the car, but could not recall if the driver had; and (2) Detective Schwartz, who testified that based on what Ms. Teeter had told him, the detective estimated that Ms. Teeter was approximately 20–25 feet away, and not nine feet as Ms. Teeter had testified, and that Ms. Teeter had not mentioned appellant's first name to him on the day after the shooting, although she had stated that she had spoken with him before.

objected. The prosecutor requested that the instruction be given because, as to appellant, who had not been involved in the earlier efforts to retrieve the car, there was evidence that he had distracted Mr. Curtis by speaking to him, giving Torrence Holton time to get out of the car. The prosecutor noted that there was evidence that all of the bullets recovered from Mr. Curtis' body were of the same caliber but there were two shooters; hence the jury might find that because bullets from only one of the guns had been found in the body, the other person who fired a gun had not been involved in Mr. Curtis' death. The trial judge agreed, and asked both defense counsel why they objected. Appellant's counsel stated that "the Government had tried the case as two shooters shooting into the car," and noted an objection for the record. Thus, the instruction was to be given based on the prosecutor's two theories: first, that because appellant had not been involved in the previous attempts to retrieve the car and because he and Mr. Curtis were good friends, appellant had acted as an aider and abettor by purposely distracting Mr. Curtis in order to give Torrence Holton time to get out of the car and into position to shoot at Mr. Curtis; second, appellant was one of the two shooters, but he did not fire the fatal shots.[4]

## II

Appellant contends that the trial judge erred by instructing the jury on aiding and abetting because there was an insufficient factual predicate for the prosecutor's claim that appellant had aided and abetted Torrence Holton by distracting Mr. Curtis as Torrence Holton got out of the car and into position to shoot at Mr. Curtis.

▉ For the government to prove that appellant aided and abetted Torrence Holton in the murder of Mr. Curtis and in the assault on Ms. Turner, the government had to prove that appellant knowingly participated in the shootings by assisting the principal or participating in the commission of the crimes with guilty knowledge. *Dew v.*

United States, 558 A.2d 1112, 1118 (D.C. 1989); *Head v. United States,* 451 A.2d 615, 626 (D.C.1982). "In evaluating a claim of insufficient evidence, an appellate court must review the evidence in the light most favorable to the government, recognizing the jury's right to determine the credibility of the witnesses and draw reasonable inferences from their testimony." *Frendak v. United States,* 408 A.2d 364, 370 (D.C. 1979). Generally, "it is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Id.* at 371. However, when the government during trial "has proceeded against the defendant as a principal and only at the close of the evidence sought an aiding and abetting instruction, such an instruction is permissible where 'there is clear and convincing evidence that the defendant was present and participating in the crime.'" *Gayden v. United States,* 584 A.2d 578, 582 (D.C. 1990) (citing *Head v. United States, supra,* 451 A.2d at 626), *cert. denied,* — U.S. ——, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *Dew, supra,* 558 A.2d at 1118. *See Bailey v. United States,* 135 U.S.App.D.C. 95, 98, 416 F.2d 1110, 1113 (1969) (guilty participation is a *sine qua non* of aiding and abetting).

▉ The government maintains, and we agree, that it was entitled to an aiding and abetting instruction under the government's primary theory that appellant was one of the shooters. As in *Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991), where the court held that an aiding and abetting instruction is appropriate when more than one gunman participates in a shooting but the evidence is unclear which gunman is responsible for firing the bullets causing the injury, the government was entitled to an aiding and abetting instruction that permitted the jury to find appellant guilty whether he was personally responsible for shooting each victim or he was acting with another in carrying out the shooting. Further, the court stated in *Head, supra,* 451

---

4. The trial judge gave the standard jury instruction on aiding and abetting. *See* CRIMINAL JURY

INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.02 (3d ed. 1978).

A.2d at 626, that "if there is clear and convincing evidence that the defendant was present and participating in the crime, a trial court's instruction on aiding and abetting does not mislead the jury or require reversal." *See Gayden, supra,* 584 A.2d at 583 (traveling to scene with a principal, remaining there during commission of crime, and fleeing with principal "are sufficient facts to underpin a conviction for aiding and abetting").

Appellant concedes that he was present at the scene of the shooting, and indeed, that he drove Torrence Holton to the scene in his car. What he primarily disputes is that the government presented clear and convincing evidence of his guilty knowledge in the act of speaking with Mr. Curtis before Torrence Holton began firing his gun.[5] Viewing the evidence, as we must, in the light most favorable to the government, *see Frendak, supra,* 408 A.2d at 370, and crediting Ms. Teeter's testimony, we are satisfied that there was clear and convincing evidence from which the jury could reasonably infer that appellant acted knowingly to distract Mr. Curtis.

Ms. Teeter testified that appellant arrived at the scene in a blue car with Torrence Holton, and exited the car first. According to Ms. Teeter, appellant walked to the driver's side of the other car and began speaking to Mr. Curtis. While he spoke to Mr. Curtis, Torrence Holton got into a posi-

tion to shoot. Once Torrence Holton began firing, appellant pulled a gun out of his waistband and began firing into the driver's side of the car where Mr. Curtis was sitting. The totality of Ms. Teeter's testimony was sufficient to show by clear and convincing evidence appellant's guilty knowledge in speaking to Mr. Curtis. There was evidence that appellant was living with a woman who had grown up with the co-defendant, who, earlier that day, had tried to help his cousin, Bobby Holton, retrieve his car from Mr. Curtis. A reasonable jury could infer that appellant knew about Torrence Holton's plans when he drove Torrence Holton and stopped in front of the car that Torrence Holton had tried to retrieve earlier that day. The jury reasonably could find that appellant's actions as driver and in bringing his own gun to the scene, and his other conduct at the scene—both the conversation and the delayed shooting—showed purposeful conduct designed in part to distract Mr. Curtis so that Torrence Holton could get into position in front of the car where Mr. Curtis was sitting. Since the evidence was that appellant had not been involved in the earlier attempts to retrieve the car, the jury also could reasonably find that Mr. Curtis would not have suspected trouble when appellant approached him and, consequently, would be caught off guard when Torrence Holton starting shooting at him.

---

5. In closing argument to the jury, the prosecutor argued both that appellant was a shooter and that he had distracted Mr. Curtis while Torrence Holton had gotten into position. The prosecutor told the jury that:

> our case has been that both of these defendants committed the offenses, that both of these defendants were armed with handguns, and that both of these men went there to kill Elliott Curtis, and in fact that's what happened, and both of them shot into the car.

The prosecutor focused on Ms. Teeter's testimony that appellant had fired into the car on the driver's side. But the prosecutor also argued that appellant had gone over to the other car and spoken with Mr. Curtis:

> because indeed hadn't been involved in any of these earlier efforts to get that car back, so could serve as the distraction factor in this case. It would keep [Mr. Curtis] off guard, and he wouldn't realize that anything was about to go down getting this car back. * * * So while he's talking and otherwise engaged,

that gave Torrence Holton the opportunity to get out of that car, to get out of that car with that gun which he purposely had on him because it was his intent to shoot up Mr. Elliott Curtis and get that car back. And he made his move once his codefendant was in place and started shooting.

Defense counsel argued to the jury about the aiding and abetting theory, emphasizing that proof of presence at the scene was insufficient and that Torrence Holton's threat to appellant "Don't move the motherfucking car" while pointing a gun at appellant made clear that appellant had no idea what would happen because he had no idea what had happened regarding prior efforts to regain possession of the car. Defense counsel further argued that the two guns involved in the shootings belonged to Torrence Holton and Mr. Curtis, relying on physical evidence that counsel interpreted as indicating that a bullet had been fired from inside of the car.

In addition, the physical evidence supported Ms. Teeter's version of events. The recovered bullets indicated that two guns were fired. The car had been struck by bullets fired on three sides of the car. Glass from the car in which the decedent was shot was found on the floor by the driver's seat of appellant's car. Furthermore, in view of Ms. Turner's testimony that Mr. Curtis was unable to reach his gun under the seat of the car, the evidence supported Ms. Teeter's testimony that the two guns involved in the shooting belonged to appellant and Torrence Holton, and not to Torrence Holton and Mr. Curtis, as defense counsel argued to the jury. Thus, unlike *Bailey, supra,* 135 U.S.App.D.C. at 99, 416 F.2d at 1114, Ms. Teeter's testimony about appellant's conversation with Mr. Curtis and his delayed shooting into the car provided "manifest evidence" of his cooperation in Torrence Holton's scheme. The evidence of appellant's guilty knowledge in speaking with Mr. Curtis was circumstantial and may not have been as strong as that in *Wesley v. United States,* 547 A.2d 1022, 1027 (D.C.1988), but it was not "borderline" evidence of aiding and abetting, as in *Downing v. United States,* 434 A.2d 409, 412 (D.C.1981) (Ferren, J., concurring).

Although appellant presented evidence that he attempted to withdraw and disassociate himself from the shooting, and some of the government's witnesses' testimony was not inconsistent with the defense version of events, the jury was not required to reject the government's version of what happened. *See Payne v. United States,* 516 A.2d 484, 495 (D.C.1986) (credibility of witnesses is for the jury). While the defense version of events, recounted principally by Mr. Freeman, was not implausible—Torrence Holton could simply have asked appellant for a ride because he knew

appellant and Mr. Curtis were friends, and appellant's presence could distract Mr. Curtis, without informing appellant of his own plans—another version, supported by the evidence, was that he arrived with a gun and joined Torrence Holton in shooting into the occupied car as soon as Torrence Holton was in position and himself had begun shooting. Neither the fact that defense counsel sought to discredit the testimony of Ms. Teeter—because of her drug habit and prior convictions and the discrepancies in her testimony regarding how close she was to the cars during the shooting and the fact that when she first spoke to the investigating detective she failed to give appellant's first name—nor the fact that she was the only witness to identify appellant as one of the two shooters meant that there was not clear and convincing evidence of the distraction theory.[6] *Hill v. United States,* 541 A.2d 1285, 1288 (D.C.1988). Contrary to appellant's contention that so viewing the evidence would require the jury "to chop [Ms.] Teeter's testimony in half," Ms. Teeter's testimony encompassed the conversation with Mr. Curtis and appellant's shooting at the occupied car after Torrence Holton started firing.[7] There was no occasion, therefore, for the jury to "fragment the testimony in a selective process ... so attenuated as to strain credulity to the breaking point." *United States v. Crowder,* 177 U.S.App.D.C. 165, 171, 543 F.2d 312, 318 (1976) (internal quotation marks omitted), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977).

Accordingly, we affirm the judgments.

---

**6.** On cross-examination Ms. Teeter testified that she was a heroin addict and on the day of the shooting she was irritable because she had not had any heroin that day. On cross-examination, she admitted to prior convictions of shoplifting and that she had a drug habit. *See* note 3, *supra.*

**7.** We do *not* read *the* prosecutor's closing argument as stating, alternatively, that appellant acted only as a distractor of Mr. Curtis and did not

fire a gun. The prosecutor told the jury: "And he [appellant] made his move once his codefendant was in place and started shooting." The reference to "his move" is consistent with Ms. Teeter's testimony that appellant joined in the shooting after Torrence Holton began shooting at the occupied car, and not that appellant did not shoot at all. In any event, the trial judge instructed the jury that the arguments of counsel are not evidence.