Nov. Term,
1853.

LEDLEY
v.
THE STATE.

THE BOARD OF TRUSTEES OF THE COUNTY SEMINARY OF TIPPE-
CANOE COUNTY v. LOCKWOOD.

Saturday,
December 31.

ERROR to the *Tippecanoe* Court of Common Pleas.

*Per Curiam.*—The judgment is affirmed with costs.

Z. *Baird*, for the plaintiffs.

R. C. *Gregory* and H. W. *Chase*, for the defendant.

---

WORT v. SCOTT.

Saturday,
December 31.

---

LEDLEY v. THE STATE.

A party excepting under s. 325, p. 112, vol. 2, R. S. 1852, to the refusal of the Court to give instructions asked, must, by himself or his attorney, sign the memorandum " refused and excepted to " written at the close of each of such instructions.

Section 325, p. 112, vol. 2, R. S. 1852, applies only to civil cases.

The R. S. 1852 were not in force in *March*, 1853.

Exceptions to instructions must, under the practice prior to the R. S. 1852, have been taken at the time they were given, or they were unavailable.

APPEAL from the *Montgomery* Circuit Court.

STUART, J.—Indictment for rape, taken by change of venue from *Tippecanoe* to *Montgomery* county. Pleas, not guilty and former acquittal. Trial by jury, verdict of guilty, motion for a new trial overruled, and judgment on the verdict. The evidence is made part of the record.

Nov. Term,
1853.

LEDLEY
v.
THE STATE.

Saturday,
December 31.

A series of propositions in relation to rape, headed "instructions asked by defendant," some of them marked in the margin "refused," and others not, signed by defendant's attorneys, are set out; and immediately following it is noted, that the following instructions were given in modification of those asked by the defendant. Then follow several legal propositions on the same subject, signed by the circuit judge. The object seems to have been to make up the record under section 325, 2 vol. R. S. 1852, page 112. The memoranda at the close, "refused and excepted to," must be signed by the party or his attorney, to bring him within the rule of practice prescribed in that section, and relates to civil cases. For criminal cases, *vide ibid.* 377. But the R. S. of 1852 were not in force at the time of the trial, *March*, 1853. *Jones* v. *Cavins*, at the present term. (1) Under the old practice, the presentation of the instructions is equally defective. No exception appears to have been taken to them at the time. They can only be regarded as unnecessarily inserted by the clerk in the transcript—forming no part of the record. The questions sought to be raised by the instructions are not, therefore, judicially before the Court.

The plea of former acquittal is wholly untenable. It appears that *Ledley*, prior to the change of venue, had been tried and found guilty in the *Tippecanoe* Circuit Court on the same indictment. At his instance a new trial was granted and the venue changed to *Montgomery*. There the plea of former acquittal was put in. The indictment contains but one count. What the plea means by an implied second count we cannot easily see. Had the indictment contained two counts, on one of which he had been acquitted and on the other convicted, and a new trial had been granted, there might have been some plau-

sibility in the plea.   But as the record appears, the plea is a nullity, and if the Court treated it as such, no error was committed.

The evidence is too revolting to be detailed.   There are certainly some very strong facts against the prisoner, tending to show his guilt, and from which a jury might draw such inference.   The prosecuting witness stands wholly unimpeached, except some discrepancies between her evidence on the trial and that on the preliminary examination, which are to some extent explained.   Otherwise, the defence did not attempt to assail either her truth or chastity.   Some parts of her evidence seem improbable, and some parts of her conduct are not to be reconciled with the vigorous resistance of a virtuous female under such circumstances.   But that, too, is to some extent explained by her position in the prisoner's family.   What seemed contradictory in her several examinations, or inconsistent in her conduct, might have been accounted for in the minds of the jury by that species of moral duress which the evidence tends to show that the prisoner exercised over her.   She was young—only sixteen—and seemingly artless, wholly inexperienced, and by no means intelligent. She came to the county as a member of the prisoner's family.   That was her only home—he and his wife her only friends.   To every one else she was comparatively a stranger.   Her character was imbecile and inefficient; his decided and impulsive.   Under such circumstances his influence over her must have been great.   Her conduct, therefore, about the time of the alleged crime and afterwards, should not be measured by any very high standard.   His house was distant from others, resistance to his mandates futile, she had no friend with whom to seek an asylum.   Hence, if she did not scream nor actively resist, nor rush from his house the moment he released her, nor disclose the outrage to the first person she met, his position and influence might satisfactorily account for it in the minds of the jury.

The evidence further shows that she did " tell Mrs. *Sheets* and Miss *Sheets* the first chance she had."   She also told

Mrs. *Rock.* One of these, Mrs. *Sheets*, was a witness for the defence, but no attempt was made to impeach or contradict the prosecutrix.

On the subject of resistance, a recent writer says, that if resistance is overcome by physical force, or her will overpowered by the fear of death, or by duress, the crime is complete, though she ceased all resistance before the act itself was finally consummated. 3 Greenl. Ev. 193. She parts with her virtue as a traveller with a pistol at his breast parts with his purse. In both cases the will is overpowered. It may be a voluntary muscular act, but not a free-will act. They submit to their fate against their will, but voluntarily for fear of worse. Courts cannot fastidiously expect every female to prefer death to violation, and her demeanor on such trying occasions, whether of tame submission or active resistance, is a circumstance for the jury to consider.

Though from the evidence we might not have found the same verdict had we sat on the jury, yet we do not feel at liberty to disturb it. *Weinzorpflin* v. *The State*, 7 Blackf. 186. The jury saw the witnesses and the parties. They have come to a conclusion which, in our view of the case, is perhaps supported by the evidence. We are the more reconciled to it, that there have been two verdicts of guilty, one in *Tippecanoe* county, the other in *Montgomery;* and that the circuit judge who presided at the second trial approved the conviction by overruling the motion for a new trial. Unless we respect such verdicts there would be little hope of bringing the guilty to punishment.

*Per Curiam.*—The judgment is affirmed with costs.

*D. Newell* and *E. A. Greenlee*, for the appellant.

*R. A. Riley, N. B. Taylor* and *J. Coburn*, for the state.

(1) *Ante*, p. 305.