## WILBUR MELVIN MILLER *v.* STATE OF INDIANA.

[No. 172A25. Filed August 14, 1972. Rehearing denied October 2, 1972. Transfer denied January 8, 1973.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, for appellee.

### STATEMENT OF THE CASE AND FACTS

BUCHANAN, N.J.—This is an appeal by defendant-appellant, Wilbur Melvin (Miller), from a conviction of "Theft by Fail-

ure to Make a Required Disposition of Property Received" pursuant to Ind. Ann. Stat. § 10-3031 (Burns Supp. 1972).

The affidavit charging Miller with theft, in part, reads:

"* * * Wilbur Melvin Miller * * * did then and there unlawfully commit the crime of theft in that he obtained the property of Burger Chef * * * then and there of the value of two thousand four hundred ninety eight dollars and fifteen cents ($2,498.15), *upon agreement * * * to make a specified disposition of such property*, to wit: to deposit said property * * * in the Merchants National Bank and Trust Company * * * and the said Wilbur Melvin Miller did then and there knowingly, unlawfully and feloniously deal with the property as his own and fail to make the aforesaid disposition * * * (Emphasis supplied.)

During the weekend of August 14-16, 1970, Miller was employed as a night manager for the Burger Chef Restaurant (Burger Chef) at Nora on Route 100 in Marion County, Indiana.

On direct examination the Burger Chef area manager, William Morin (Morin), testified that among other things, Miller's duties as night manager were to:

"* * * handle receipts, see that the store was handled properly, kept clean, that it was locked up properly at night, *that any deposits that were his obligation to make on his shift were to be made by him * * *.*" (Emphasis supplied.) (Tr. p. 123.)

The general policy of the Burger Chef store at Nora was that each shift manager deposit the receipts from his shift at the Merchants Branch Bank near Nora if they exceeded $1,000.00—the manager not being permitted to leave the money in the store's safe for use by the next shift.

Morin stated on cross-examination that, to his knowledge, the Nora Burger Chef never kept Saturday or Sunday receipts in the store's vault, but rather all moneys were always taken to the Merchants Branch Bank deposit vault. Since each weekend shift, which included Friday, Saturday and Sunday, generally did more than $1,000.00 business, two deposits were

required each day, one by the general manager after the day shift ended at 5:00 P.M., and the other by the night manager after closing, making a weekend total of six deposits.

The procedure for depositing shift receipts was for the shift manager to take the receipts to the Merchants Branch Bank in bags provided by the bank and deposit them in the deposit vault, using a special key for this purpose which Miller had in his possession. After the weekend deposits were made, the deposit slips and bags were then picked up at the bank on Monday morning by a responsible Burger Chef employee.

On Sunday, August 16, 1970, the Nora Burger Chef's general manager and day manager, Mr. Richard Patton (Patton), was scheduled to begin his vacation. Consequently, a deviation from the Burger Chef policy requiring each shift manager to make his own deposits was invoked. In order to implement the change in deposit policy for the weekend of August 14-16, Morin personally told Miller of Patton's approaching vacation and that during Patton's vacation Miller was "* * * to proceed as the general manager would and assume his duties pertaining to money and the overall handling of the operation." The effect of this variance in the deposit policy was to authorize and require Miller to make both the day and night deposits for Saturday and Sunday, August 15 and 16. The unrefuted evidence showed that Miller's possession of the cash receipts was for the sole purpose of making deposits.

The evidence also showed that on both Saturday and Sunday, August 15 and 16, Thomas Walpole (Walpole) counted the day shift receipts around 4:00 P.M. and gave them to Miller, who purported to leave Burger Chef in order to deposit the receipts with the Merchants Branch Bank. Walpole testified to these events thusly:

"Q. What did you do during the day?
A. Well we were rather busy at working the lines then at approximately four o'clock, I believe it was, when Mr.

Patton, the General Manager decided it was time to leave and he had me count the registers out. After I got through counting the registers out, *I gave the deposit bags to Mr. Miller* and he took it to the bank.

Q. Do you know whether or not he did take that bag to the bank?

A. Well he took the bag, I don't know if he—it was one of the bags that was never reported at the bank.

\* \* \*

Q. And what did you do Sunday when you got there?

A. Well, Sunday I had to run the store. \* \* \* and I had three of my registers counted and I was on the front line, counting the fourth register when Mr. Miller came in, picked up Sunday's deposit bag and left with it, \* \* \*" (Emphasis supplied.)

Nora Burger Chef store reports admitted in evidence reflected total receipts for Saturday and Sunday, August 15 and 16, in the amount of $2,498.15, which according to Miller's instructions and the established procedures of Burger Chef were to be made in four separate deposits by Miller on the Saturday and Sunday in question.

On Monday, August 17, Walpole went to the Merchants Branch Bank to pick up the six deposit bags and slips from the six deposits presumably made over the weekend. After arriving, however, Walpole and bank officials discovered that only two deposits were made during the weekend, representing the day and night receipts of Friday, the 14th of August. Only two deposit bags were found. The remaining four bags, which were to have contained the Saturday and Sunday deposits, were missing.

Walpole and the bank officials examined the bank's weekend deposit records and discovered that only one deposit in the amount of $838.17 (representing a Friday deposit) was made by the Nora Burger Chef during the weekend of August 14 through 16, 1970. Robert W. Pollett, Assistant Manager of the Merchants Branch Bank, testified as such:

"Q. Now do you have a log for the weekend of August 15, well August 14 to August 17?

A. Yes, sir.

\* \* \*

A. Yes. You are primarily interested in what date now, the Monday following the 15th and 16th?

Q. Is that what you call the weekend deposits?

A. Right. We are not open on Saturday, of course, nor on Sunday, so any brought in Friday night after we close or Saturday or Sunday would be taken into business on Monday, which would be the 17th of August.

Q. Now can you look at that log and tell us how many bags Burger Chef deposited?

A. Yes, over the weekend apparently there was one bag deposited which was shown as deposited on Monday the 17th. It was bag number one thirty four and the deposit amount was eight hundred thirty eight dollars and seventeen cents. ($838.17).

Q. Is that the only bag that was deposited over the weekend?

A. Right."

Miller was scheduled to return to work Monday, August 17, at 4:00 P.M., but he failed to report. It was only much later that he was discovered to have gone to California. Miller did not give any explanation as to what happened to the money, why he failed to return to work, or why he went to California.

Miller was found guilty by the jury and sentenced to the Indiana State Prison for a term of not less than one nor more than ten years and fined $1900.00 and costs.

ISSUE—Is the verdict of the jury supported by sufficient evidence of all necessary elements of the crime, *i.e.*, that Miller was under an "agreement" to make the deposit, that he did not in fact make the deposit, and that he thereby wrongfully dealt with the property as his own?

Miller contends that the State failed to introduce evidence of an "agreement" between Miller and Burger Chef to make the deposit in the specified amount of $2498.15; that the State failed to show that Miller did not make the specified disposition

and; that the State failed to prove Miller dealt with the property as his own and could not rely on the inference created by IC 1971, 35-17-5-4, Ind. Ann. Stat. § 10-3031 (Burns Supp. 1972) to supply the omission.

The State counters that while the record does not show any verbalized agreement between Miller and Burger Chef as such, there was a sufficient showing of an agreement from the terms of Miller's employment contract and the duties imposed upon Miller as night manager, all of which were included in the basic job description and written instructions recognized by Miller's own conduct.

DECISION—It is our opinion that Miller's conviction is supported by sufficient evidence of all necessary elements of the crime charged.

IC 1971, 35-17-5-4, Ind. Ann. Stat. § 10-3031 (Burns Supp. 1972), (the statute), under which Miller was convicted, provides:

> 10-3031.   Theft by failure to make required disposition of property received.— (1) Scope. *A person who obtains property upon agreement,* or subject to a known legal obligation, *to make specified payment or other disposition,* whether from such property or its proceeds *commits theft if he deals with the property obtained as his own, and* either *fails to make the required* payment or *disposition* or, if he is a private fiduciary, fails to make the required payment or disposition after demand has been made by the person legally authorized to do so or by the surety on his bond, except where the actor's obligation in the transaction was limited to a promise or other duty to be performed in the future without any present duty to reserve property for such performance. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the actor's failure to make the required payment or disposition.
>
> (2) Inferences. A person within the categories listed below shall be inferred to have knowledge of any legal obligation relevant under subsection (1), and shall in addition be inferred to have dealt with the property as his own if he fails to make a required payment or disposition, or if he falsifies a relevant account, or if he has a shortage in a relevant account, or if he, being an officer or employee of

the government, fails to pay over to his successor any property remaining in his hands, or deposits government property contrary to law, or exchanges it for other property except as allowed by law:

(a) an officer or employee of the government or of a credit institution; or

(b) a fiduciary; or

(c) a person engaged in a business subject to a statutory obligation to reserve property received or equivalent amounts of his own property for specified purposes. [Acts 1963 (Spec. Session) Ch. 10, Sec. 4, P. 10.] (Emphasis supplied.)

This relatively new statute (1963) requires proof of three elements to convict a person of the crime of Theft ▇ By Failure to Make Required Disposition of Property Received:

1) That there was an agreement binding the defendant to make a required disposition of property obtained by him;
2) That he failed to make the required disposition;
3) That he dealt with the property as his own.

In *Vaughn* v. *State* (1971), 255 Ind. 678, 266 N. E. 2d 219, our Supreme Court stated:

"That a conviction may be sustained wholly on circumstantial evidence is not in doubt provided the evidence is of such probative value that a reasonable inference of guilt may be drawn. Coach v. State (1968), 250 Ind. 226, 235 N. E. 2d 493; Medsker v. State (1968), 249 Ind. 369, 232 N. E. 2d 869; Melvin v. State (1968), 249 Ind. 351, 232 N. E. 2d 606; Stallings v. State (1967), 249 Ind. 110, 231 N. E. 2d 29."

The same court has even more specifically held that the prosecution is entitled to resort to circumstantial evidence to prove the essential elements of the crime charged. ▇ *Banks* v. *State* (1971), 257 Ind. 653, 276 N. E. 2d 155; *Ellis* v. *State* (1969), 252 Ind. 472, 250 N. E. 2d 364; *Hardesty* v. *State* (1967), 249 Ind. 518, 231 N. E. 2d 510.

From our examination of the record we must conclude that the circumstantial evidence presented by the State is of sufficient probative force to sustain Miller's conviction.

Miller espouses an interpretation of the statute that the "agreement" between Miller and Burger Chef Systems, Inc. must be proven to be that they agreed to a specified disposition of $2,498.15 in U. S. currency to be deposited in this exact sum in the Burger Chef Systems, Inc. account at the Merchants National Bank & Trust Company. Otherwise, there has not been the "specified payment or other disposition" required by the statute as an essential element of the crime. This restrictive interpretation in effect precludes the possibility of any implied agreement. This amounts to a semantic straightjacket. It eliminates the basic concept that an agreement may exist by virtue of words or acts of the parties resulting in a meeting of the minds as to the performance of certain duties and the existence of certain rights.

It is also basic that the relationship of employer and employee is contractual and arises from an express or *implied* contract. *Michel* v. *Forde* (1963), 135 Ind. App. 360, 191 N. E. 2d 507; *Rogers* v. *Rogers* (1919), 70 Ind. App. 659, 122 N. E. 2d 778; *McDowell* v. *Duer* (1922), 78 Ind. App. 440, 133 N. E. 2d 839.

Indicative of the relationship is this court's language in *Rogers* v. *Rogers, supra:*

"The relation of employer and employee is contractual. Like any other contractual relation, it is a product of a meeting of the minds. *Western Union Tel. Co.* v. *Northcutt* (1909), 158 Ala. 539, 48 S. 553, 138 am. st. 38; 18 R. C. L. 490. To create the relation of employer and employee there must be an express contract, *or such acts as will show unequivocally that the parties recognize one another as master and servant. * * *"* (Emphasis supplied.)

The evidence presented by the State, through testimony of various Burger Chef officials, clearly established that it was

the night manager's duty to deposit the receipts taken in during his shift. Miller was personally informed by Morin that it would also be his responsibility to deposit the day receipts while the regular day manager was on vacation. The evidence also established that Miller's authority over these receipts extended only to depositing them with the Merchants Brank Bank at Nora. Consequently, Miller knew not only from Morin's oral instructions, but also from the very nature of his employment contract that his duties for Saturday and Sunday, August 15 and 16, included depositing the day and night receipts. By accepting employment with Burger Chef, Miller impliedly agreed to carry out his employment duties in the manner prescribed by Burger Chef policies.

Miller takes the position there was no evidence that he did not deposit the August 15 and 16 receipts and that the only evidence presented was that four deposit bags were missing.

This is not so. The Burger Chef store records, which were admitted into evidence, indicated that $2,498.15 was received by Burger Chef on Saturday and Sunday, August 15 and 16. Moreover, Walpole personally gave the day receipts for those two days to Miller and, as night manager, Miller had control over the night receipts. The unrefuted evidence was that of the six deposit bags to be received by the Merchants Branch Bank over the weekend of August 14 to 16, only two were received, and these represented the Friday deposits—the remaining four containing the Saturday and Sunday receipts of $2,498.15 were not received by Merchants. The bank's weekend deposit record indicated that the bank failed to receive any of the four deposits for which Miller was responsible. It reflected only one deposit in the amount of $838.17, the day receipts for Friday, August 14.

In sum, from the fact that Miller did accept the receipts for deposit from Walpole, the receipts for August 15 and 16 amounted to $2,498.15, the bank records did not indicate an August 15 or 16 deposit, and the four deposit bags for August 15 and 16 were not received by Merchants, the jury could

reasonably infer beyond a reasonable doubt that Miller had failed to make the required disposition of the August 15 and 16 receipts of $2,498.15.

Miller's last argument is that there was no evidence presented to show that he dealt with the money as his own and that the State can not resort to the statutory inference that a fiduciary has dealt with property as his own because there was no proof he was a fiduciary.

The State did not need to rely on the inference created by the statute that Miller dealt with the money as his own. There is more than adequate circumstantial evidence justifying the jury finding that Miller did deal with the money as his own. In addition to the bank's weekend deposit records, the missing deposit bags, the delivery of the receipts to Miller personally, there is the additional circumstance that Miller failed to return to work the following day without explanation and without indicating what he did with the receipts. Such evidence of escape or attempted avoidance of arrest is competent circumstantial evidence of consciousness of guilt. *Thomas* v. *State* (1970), 254 Ind. 561, 261 N. E. 2d 224; *Meredith* v. *State* (1966), 247 Ind. 233, 214 N. E. 2d 385; *McMinoway* v. *State* (1972), 283 N. E. 2d 553. There is more than sufficient circumstantial evidence from which a jury could infer beyond a reasonable doubt that Miller dealt with the property as his own.

On appeal, this court will not weigh the evidence nor resolve questions of credibility of the witness. We will look only to the evidence most favorable to the State and *the reasonable inferences* therefrom which could support the jury's verdict. *Washington* v. *State* (1971), 257 Ind. 40, 271 N. E. 2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N. E. 2d 893; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407. We find an abundance of such inferences.

Having rejected Miller's tortured interpretation of the word "agreement" we must conclude that circumstantial evidence most favorable to the State was sufficient for the jury to find

beyond a reasonable doubt that Miller had committed "Theft By Failure to Make a Required Disposition of Property Received."

Miller's conviction is hereby affirmed.

White and Sullivan, JJ., concur.

NOTE.—Reported in 285 N. E. 2d 843.