### GERALD LEE HARMS *v*. STATE OF INDIANA.

[No. 1-872A36. Filed April 23, 1973. Rehearing denied May 30, 1973. Transfer denied October 16, 1973.]

124

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Harms) was indicted for Second Degree Murder, tried by jury and convicted of Voluntary Manslaughter.

He appeals, alleging three errors: (1) Admission into evidence of a stolen TV set and testimony concerning it, (2) An instruction on the subject of aiding and abetting and (3) Admission into evidence of a stipulation concerning Harms' participation in a jail break and an instruction concerning the stipulation.

The evidence showed that Harms, David Hudson (the deceased) and other persons spent most of Sunday, October 17, 1971, drinking together. After visiting several bootleg places, Harms and Hudson engaged in a fist fight. After they were separated, Harms told Hudson "you had better not go home, because I am going to get a gun and I am going to kill you." Hudson returned home and went to bed. Shortly thereafter, his wife answered a knock at the door and Harms pointed a gun at her, saying, "don't move."

Mrs. Hudson slammed the door and ran to tell Hudson what had happened. Together they closed the curtains and moved a refrigerator away from an unused door which connected with the adjoining apartment. Mrs. Hudson entered the other apartment and called the police. While on the phone she heard Harms yell, "come on out, David, I am going to kill you." She also heard the back window glass break, the back door slam shut, a shot and David yell, "Oh." She dropped the phone, ran to the back yard and found Hudson, apparently dead. Hudson died of a bullet wound in the chest.

Two neighbors, Mr. and Mrs. Stofleth, testified that they heard arguing and a fight in progress and heard a male voice yell, " 'kill him, God damn it, kill him' " and then a shot. Mr. Stofleth had previously heard *another* voice say, " 'I have got to kill you, David,' " and Mrs. Hudson say, " 'they are going to kill my baby.' " Stofleth also testified that the two different male voices were interacting and apparently were cooperating.

Another neighbor testified that she saw "three men fighting" and that "One was kind of holding one guy and another was hitting him." She also stated that "somebody said, 'we are going to have to kill you, David,' or something to that effect." She also heard the shot.

Mike Scott also testified he heard the fight, and someone say "David, I have got to kill you," and then some shots.

Mrs. Decker, the neighbor in the adjoining apartment also heard a "man's voice on the outside, say, David I have got to kill you." Then she heard one shot.

Mrs. Decker's son, Billy, testified that earlier that evening he had seen Hudson and two others sitting in Hudson's home, drinking and talking. He overheard Hudson say, "I am tired of stealing, I am going to take everything I have got and go to the police," to which someone replied, "if you want to live long, don't talk like that."

Harms first contends that a television set and testimony concerning it were inadmissible as tending to prove another crime. He cites *Hennings* v. *State* (1971), 256 Ind. 115, 267 N.E.2d 172, for this general rule.

The State contends that the admission of this evidence falls within the *motive* exception to the general rule. We agree.

Matt Woods testified that Exhibit 27, the TV set, had been stolen from his tavern on that same Sunday between 4:30 P.M. and 10:00 P.M. Dennis Cook, who had been in and out of the Hudson apartment, drinking with Hudson and the others, testified that he saw the TV set in question sitting in Hudson's kitchen that evening.

The court properly admitted this exhibit over Harms' objection. There was evidence that the TV was stolen a few hours prior to the homicide and seen in Hudson's kitchen that evening. It could be inferred that Hudson and others had been involved in burglarious activities that day. There was direct evidence that Hudson wanted out and that because of this, his life was threatened.

The testimony concerning the TV, and the set itself, tended to prove a motive for Hudson's killing. It was admissible under the motive exception to the general rule. ■ *Schnee* v. *State* (1970), 254 Ind. 661, 262 N.E.2d 186.

Harms next maintains that there was neither evidence of aiding or abetting, nor of guilt on the part of another, upon which to base State's Instruction No. 1, which reads:

"You are instructed that a Statute of our State in full force and effect reads as follows:
'Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were a principal. * * *'
This statute covers all felonies in Indiana and therefore a defendant can be held responsible if he either perpetrated the crime or aided, abetted or encouraged its commission. A defendant is responsible for the acts of his confederates as well as his own."

Several witnesses testified that there were at least three men present when the shooting occurred. This, coupled with a lack of direct evidence that Harms actually fired the fatal shot, together with the statement "Kill him God damn it kill him" could give rise to the inference that Harms either killed Hudson or aided or abetted his killer.

As the court said in *Doss* v. *State* (1971), 256 Ind. 174, 267 N.E.2d 385:

"Although the appellant was charged as a principal, the trial court did not err in giving an instruction on accessory before the fact. We stated in *Bays* v. *State* (1959), 240 Ind. 37, 51, 159 N.E.2d 393, 399, that:

"* * * the law is now settled that a person may be charged with a crime as a principal and convicted on evidence that he aided in the commission of the crime * * * and ▮ that *in the presence of evidence to support it* an instruction based upon the statute, § 9-102, Burns 1956 Repl., which makes accessories guilty as principals, is proper.'" (Emphasis added.) See also, *Tyler* v. *State* (1973), 155 Ind. App. 252, 292 N.E.2d 630.

State's Exhibit 28, a stipulation relating to Harms' escape from jail, was admitted into evidence over Harms' objection. He asserts this was error because the purpose of admitting such evidence is to show guilt. He contends that since his only purpose in leaving the jail was to see his wife and children and since he did not leave Vanderburgh County, that the escape does not show guilt.

The stipulation reads:

"On the 26th day of December, 1971, shortly after midnight, fifteen persons who were then incarcerated in the Vanderburgh County Jail in Evansville, Indiana, escaped from the Vanderburgh County Jail. One of those fifteen persons was the defendant in this case, Gerald Lee Harms. It is Stipulated that Gerald Lee Harms was not an instigator of this action, nor did he personally exert any force upon any authorities in the jail. Rather, other individuals conceived and initiated the original break and thereby made it possible for Gerald Lee Harms to escape. After some number of hours, Gerald Harms went to 121 West Illinois in the City of Evansville where his wife was then residing. He found that no one was at home, but remained at the apartment. At approximately 12:00 noon on December 26, 1971, Gerald Harms was apprehended at this same location, 121 West Illinois Street by William Droll, of the Vanderburgh County Sheriff's Department, in the company of Deputy Sheriff Crosser. Gerald Harms offered no resistance at the time of his apprehension and stated to the arresting officers that he left the jail and went to that address to see his wife and children."

The court gave State's Instruction No. 2, concerning the stipulation. It reads:

"Evidence has been introduced as to an escape from jail by the defendant while in the custody of the sheriff of this county on this charge. If you find from the evidence that

this defendant did thus escape from custody, this is a circumstance to be considered by you in connection with all the other evidence to aid you in determining the question of his guilt or innocence."

Harms admitted the truth of the matters contained in the stipulation, but objected to the above instruction, giving the same reasons he urged concerning the admissibility of the stipulation itself.

The court in *Layton* v. *State* (1968), 251 Ind. 205, 240 N.E.2d 489, stated:

"From time immemorial it has been held that evidence of flight or evidence of escape while being held on a charge is admissible upon the issue of guilt of the defendant, *Irvin* v. *State* (1957), 236 Ind. 384, 139 N.E.2d 898; *Meredith* v. *State* (1966), 247 Ind. 233, 214 N.E.2d 385; *Anderson* v. *State* (1885), 104 Ind. 467, 4 N.E. 63."

Harms' subjective statements as to his reasons for fleeing more properly go to the weight to be given the stipulation and not to its admissibility. Evidence of Harms' escape was admissible pursuant to *Layton, supra.* Neither the admission of the stipulation nor the instruction concerning it, was error.

There being no reversible error, the judgment is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 295 N.E.2d 156.