EUGENE GRIMES *v.* STATE OF INDIANA.

[No. 3-375A42. Filed September 1, 1976. Rehearing denied Demeber 1, 1976.]

*James E. Foster,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

STATON, P.J.—Eugene Grimes was charged with rape (statutory) of a thirteen-year-old girl. IC 1971, 35-13-4-3 (Burns

Code Ed.). After a jury trial, he was convicted of assault and battery with intent to commit a felony. IC 1971, 35-1-54-3 (Burns Code Ed.). He was sentenced to a term of not less than one (1) nor more than ten (10) years. His belated appeal to this Court raises the following issues:

(1) Did the trial court err in allowing an amendment to the information?

(2) Did the trial court err in admitting a waiver and statement given by Grimes?

(3) Did the trial court err in not instructing the jury on the lesser includable offense of assault and battery with intent to gratify sexual desires, IC 1971, 35-1-54-4 (Burns Code Ed.)?

(4) Did the trial court err in instructing the jury that assault and battery with intent to commit a felony is a lesser included offense of the principal crime of statutory rape?

We find no reversible error, and we affirm.

## I.

### Amendment of Information

On November 20, 1973, the State filed the original information, which charged that the offense occurred on or about November *15, 1973.* On May 6, 1974, the State filed an amended information which changed the date of the offense to on or about November *14, 1974.* On October 1, 1974, immediately prior to trial, the State moved to amend the amended information to correct the year from 1974 to 1973. Grimes conceded that the change of year was obviously a typographical error, but he objected to the change of day from the 15th to the 14th. He argues that the amendment was made without notice to him, that no proper motion was made to change the day, and that the amendment was detrimental to the preparation of his defense. He contends that the amendment should not have been granted and that the State should have been "left with any difficulties the variance between the evidence and the information may result in."

IC 1971, 35-3.1-1-5 (Burns Code Ed.), provides, in pertinent part:

"(a) *An indictment or information* which charges the commission of a crime shall not be dismissed but *may be amended* on *motion by the prosecutor at any time because of any immaterial defect,* including:

\* \* \*

"(7) The failure to state the time or place at which the crime was committed where time or place is not of the essence of the crime;

\* \* \*

"(9) Any other defect which does not prejudice the substantial rights of the defendant.

\* \* \*

"(b) The indictment or information may be amended in matters of substance giving notice to the defendant and with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

"(c) Upon motion of the prosecutor the court [may] at any time before, during or after the trial permit an amendment to the indictment or information in respect to any defect, imperfection or omission in form which does not prejudice the substantial rights of the defendant.

"(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense." (our emphasis).

Although the statutory procedures of motion, notice, and opportunity to be heard were not followed when the State filed its amended information on May 6, 1974, we conclude that the errors were unintentional and harmless. There is no showing that the amendment prejudiced the substantial rights of the defendant. Time was not of the essence of the offense charged. Grimes did not file a notice of alibi defense prior to trial to the offense as originally

charged. When Grimes became aware of the amendment prior to trial, he was given an opportunity to be heard. He did not seek a continuance, and he cannot now complain that he was not allowed adequate opportunity to prepare his defense to the amended charge.

Grimes has not shown that he was prejudiced in any way by the procedural errors or by the trial court's decision to allow the amended information to stand. Unless there is a showing of prejudice, we will not reverse a conviction on appeal.

## II.
### Waiver of Rights and Statement

Grimes was arrested on the evening of November 14, 1973. On the morning of November 15, 1973, Grimes was questioned by Officer Curley. He made a statement at 10:15 A.M. and signed a waiver of rights form at 11:00 A.M. At trial, Grimes objected to the admission of the waiver and statement on the grounds that (1) there was no showing that Grimes knowingly and intelligently waived his rights *before* the statement was made, and (2) the statement was involuntary because Grimes was questioned more than twelve hours after his arrest and before he was taken before a magistrate. The trial court over-ruled Grimes' objections after a hearing outside the presence of the jury, and the waiver and statement were admitted into evidence.

The basis of Grimes' contention that he did not waive his rights prior to giving the statement is that, according to the times noted on each of the documents, the waiver was signed after the statement was signed. There is no requirement that a defendant sign a written waiver in order to comply with the constitutional requirement that he be advised of his rights prior to any custodial interrogation. *Hewitt* v. *State* (1973), 261 Ind. 71, 300 N.E.2d 94. The fact that the written waiver may have been signed after Grimes made the statement does not necessarily establish that Grimes

was not advised of his rights, and did not knowingly and intelligently waive them, prior to making the statement. The signature may well have been a formality which followed the entire process.

In the present case, there is ample evidence that Grimes was advised of his rights prior to his custodial interrogation, that he understood them, and that he voluntarily waived them and agreed to give a statement to the police. Officer Curley testified that, prior to questioning Grimes, he advised him of his "right to remain silent, his right to an attorney, his right to any time that I am questioning him to request an attorney to be present and also his right that if he doesn't have funds to obtain any attorney, the Court will provide one. Then I also read him those rights off that waiver form that we have." The rights on the waiver form are as follows:

"1. Before making this statement, I was advised that I have the right to remain silent, and that anything I might say may or will be used against me in a court of law.

"2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

"3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversation.

"4. That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

"5. That if I cannot hire an attorney, one will be provided for me."

Officer Curley testified that Grimes read the waiver of rights form after Curley read it to him:

"Q. Do you think he understood these rights that you said you read to him?

"A. Yes, he said he did.

"Q. What did he say?

"A. He said yes, he give me a statement, he understood

that he had the right to remain silent and not give a statement or call for an attorney."

Our review of the record reveals that Grimes was advised of his rights in clear and understandable terms prior to making a statement to Officer Curley. The fact that he may not have signed the written waiver form until after he made his statement does not invalidate his waiver or negate the clear proof that the waiver and statement were voluntarily and knowingly given.

Grimes argues that the waiver and statement should not have been admitted into evidence because he was not taken before a magistrate within six hours of his arrest, IC 1971, 35-5-5-3 (Burns Code Ed.), and because the statement was taken more than six hours after his arrest and before he was taken before a magistrate. In Indiana, delay in bringing a defendant before a judge "is but one factor to be considered in determining the admissibility of a confession taken more than six hours after a defendant's arrest." *Apple* v. *State* (1973), 158 Ind. App. 663, 304 N.E.2d 321, 325. A trial court may still find that the confession is admissible if, "looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influence." *Nacoff* v. *State* (1971), 256 Ind. 97, 101, 267 N.E.2d 165, 167. See IC 1971, 35-5-5-1, -2, -3 (Burns Code Ed.). In the present case, the testimony reveals that the length of the interrogation session was reasonable, that Grimes was advised of his rights, understood them, and voluntarily waived them, and that he did not at any time express a desire to consult with an attorney or to stop the questioning session. Officer Curley denied that Grimes was threatened in any way or that any promises were made to induce his statement. On the basis of the evidence presented, the trial court could reasonably have determined that Grimes' statement was voluntarily given, despite the delay in bringing him before a judge.

Although we have determined that the trial court did not err in admitting the waiver and statement, we emphasize, as we did in *Crawford* v. *State* (1973), 156 Ind. App. 593, 298 N.E.2d 22, 25, that it is not our intention to "put our judicial seal of approval on the practice of the police which is clearly reflected in this record." Grimes was apparently held in custody by the Gary police *after* he made his statement on November 15, 1973, until November 20, 1973, when the information was filed against him and he was taken before a judge. Officer Curley, in response to the trial court's questioning, stated that Grimes was not taken before a judicial officer within twenty-four hours of his arrest, as required by IC 1971, 18-1-11-8 (Burns Code Ed.), because " I was carrying on the investigation and it just wasn't possible to get all the statements and evidence that I had to gather in that period of time." The court continued:

"BY THE COURT: Is it a common practice in the city of Gary to hold prisoners without charge and without judicial authorization for as long as 8 to 10 days?

"A. No, sir.

"Q. How long do you hold them prior to judicial authorization?

"A. Well, with the case of adults we try to get the charge levied within—try to get the case to the Lake County Prosecutor's office within 3 days or sooner.

"Q. You hold Defendants without warrants prior to the filing of the case?

"A. Sir, only to conduct an investigation.

"Q. Do you hold people without warrants prior to charges being filed in Court?

"A. I'd have to say, yes, sir."

In the present case, Grimes' statement was made within twenty-four hours of his arrest, and no violation of IC 1971, 18-1-11-8 (Burns Code Ed.) had yet occurred. There is no suggestion of coercion on the part of the police in eliciting the statement. Further, his statement was not, in fact, a confession of guilt of the crime charged, but was merely an

admission of his presence at the scene and his responsibility for calling a halt to the acts of others. In light of these circumstances, we declare to reverse Grimes' conviction because of the subsequent irresponsibility of the police in detaining him for five days before taking him before a magistrate. We do not, however, in any sense, condone what appears to be a common practice of the Gary police department.

## III.

### Instructions

Grimes was charged with rape of a thirteen-yar-old girl. The crime of rape was defined as follows:

"Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen [16] years . . . is guilty of rape, and on conviction shall be imprisoned for a determinate period of not less than two [2] years nor more than twenty-one [21] years." Ch. 148, § 3, [1941] Ind. Acts 447 (amended 1974) (present law is codified at IC 1971, 35-13-4-3 (Burns Code Ed.)).

The trial court instructed the jury on the lesser included offense of assault and battery with intent to commit a felony, IC 1971, 35-1-54-3 (Burns Code Ed.), assault and battery, IC 1971, 35-1-54-4 (Burns Code Ed.), and assault, IC 1971, 35-13-4-7 (Burns Code Ed.). The pertinent instructions given by the trial court were as follows:

INSTRUCTION NO. 3: "Included in the crime charged in the affidavit in this case is a certain lesser offense, which lesser crime is defined by Statute in Indiana as explained in the following instruction."

INSTRUCTION NO. 4: "ASSAULT OR ASSAULT AND BATTERY (with intent to commit any felony) is defined by statute in Indiana as follows:

Whoever perpetrates an assault or assault and battery upon any human being with intent to commit any felony other than a felonious homicide, shall, on conviction, be imprisoned in the state prison for not less than one (1) nor more than ten (10) years."

INSTRUCTION NO. 5: "ASSAULT AND BATTERY is defined by statute in Indiana as follows:

Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery. Upon conviction, he shall be imprisoned in the county jail for a term not to exceed six (6) months, to which punishment may be added a fine in a sum not to exceed one thousand dollars ($1,000)."

INSTRUCTION NO. 6: "ASSAULT is defined by statute in Indiana as follows:

Whoever, having the present ability to do so, attempts to commit a violent injury upon the person of another, is guilty of an assault, and, on conviction, shall be fined in any sum not exceeding five hundred dollars ($500), to which may be added imprisonment in the county jail or in the Indiana State Farm not exceeding six (6) months."

Grimes contends on appeal that the trial court erred in not instructing the jury that assault and battery with intent to gratify sexual desires, IC 1971, 35-1-54-4 (Burns Code Ed.), is a lesser included offense of the principal charge. Assault and battery with intent to gratify sexual desires is a hybrid specis of assault and battery and is defined in the statute which defines the offense of assault and battery:

"Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and on conviction, shall be fined not more than one thousand dollars [$1,000], to which may be added imprisonment in the county jail not exceeding six [6] months: Provided, That whenever in the commission of the offense any person removes, tears, unbuttons, unfastens, or attempts to remove, tear, unbutton or unfasten any clothing of any child who has attained his or her twelfth birthday but has not attained his or her seventeenth birthday, or fondles or caresses the body or any part thereof of such child with the intent to gratify the sexual desires or appetites of the offending person or, under circumstances which frighten, excite, or tend to frighten or excite such child, the punishment shall be imprisonment in the Indiana state prison for a period of time not less than one [1] year nor more than five [5] years: Provided further, That if such child has not attained his or her twelfth birthday, the punishment for such offense shall be imprisonment in the Indiana state prison for a period of time of not less than two [2] years nor more

than twenty-one [21] years." IC 1971, 35-1-54-4 (Burns Code Ed.).

Assault and battery with intent to gratify sexual desires has been held to be a lesser included offense of the crime of statutory rape. *McCormick* v. *State* (1974), 262 Ind. 303, 315 N.E. 2d 360. In the present case, there was evidence, for example, of removal of the victim's clothing, that would have supported an instruction on assault and battery with intent to gratify. See *Hash* v. *State* (1972), 258 Ind. 692, 284 N.E.2d 770. However, Grimes did not object at trial to the instruction given on lesser included offenses, nor did he tender any instructions. Since Grimes did not object to the failure of the trial court to give the omitted instruction and failed to tender an instruction on the subject, he cannot now complain of error. See Indiana Rule of Procedure, Criminal Rule 8(B) ; *Hunt* v. *State* (1973), 260 Ind. 375, 296 N.E.2d 116.

Grimes argues that, under the circumstances of this case, the waiver doctrine is inapplicable. He contends that the trial court, in charging the jury, has a duty to state all matters necessary for the jury's information in giving their verdict. IC 1971, 35-1-35-1 (Burns Code Ed.). Thus, Grimes says, the burden of deciding when an instruction on a lesser included offense should be given is not exclusively on the defendant. The essence of Grimes' argument is that the trial court's failure to instruct on assault and battery with intent to gratify sexual desires was a violation of his constitutional right to a fair trial and, therefore, constituted "fundamental error." We do not agree. The fundamental error doctrine contemplates error "so prejudicial to the rights of the Appellant that he *could not* have had a fair trial." *Grier* v. *State* (1968), 251 Ind. 214, 217, 240 N.E.2d 494, 496 (our emphasis). In *Winston* v. *State* (1975), 165 Ind. App. 369, 332 N.E.2d 229, the Court set out a framework for evaluating fundamental error claims. The first consideration is the character of the error and its effect on the trial as a whole. Fundamental error "pervades the climate of the pro-

ceedings below, *viewed as a whole,* depriving the defendant of any realistic opportunity for a fair hearing." 332 N.E.2d at 232. The second consideration is the function of the proper objection requirement.

> "Presumably a trial judge is aware of his own *sua sponte* duties. Thus the necessity of informing him of dereliction in such duties, and the likelihood that he would properly perform such a duty merely because defense counsel informed him of it, is slight. Therefore, in the case of error by a trial judge in his *sua sponte* obligations, the policy requiring timely and specific objection . . . is not as significant a factor weighing against invocation of the 'fundamental error' doctrine as in matters wherein the parties necessarily shoulder the burden of pointing out error." 332 N.E.2d at 233 (citation omitted).

It is true that the trial judge has a duty, in charging the jury, to "state to them all matters of law which are necessary for their information in giving their verdict." IC 1971, 35-1-35-1 (Burns Code Ed.). The performance of this duty requires some discretion on the part of the trial court. *See Hash* v. *State* (1972), 258 Ind. 692, 284 N.E.2d 770 (trial court may consider the evidence to determine whether an instruction on a lesser included offense is necessary) ; *Aikins* v. *State* (1971), 256 Ind. 671, 674, 271 N.E.2d 418, 420 (jury must be apprised of lesser included offenses or degrees of offenses "where the defendant so requests or where the judge deems it necessary") : Clearly, an error on the part of the trial judge in instructing the jury is likely to be corrected if the defense counsel informs the judge of his objections. The policy requiring timely and specific objections to jury instructions is one which weighs heavily against invocation of the fundamental error doctrine. The very purpose of the specific objection rule is

> "to indicate specific errors in the trial court's instructions so that the court may have an opportunity to make any necessary corrections in order to avoid a new trial." *Summerlin* v. *State* (1971), 256 Ind. 652, 662, 271 N.E.2d 411, 416, *citing Warren* v. *State* (1963), 243 Ind. 508, 188 N.E.2d 108; *Murray* v. *State* (1866), 26 Ind. 141; *Ledley* v. *State* (1853), 4 Ind. 580.

A defendant may not stand idly by while the trial court makes an error in instructing the jury and then claim, on appeal, that because of this error he is entitled to a new trial. The error, in the present case, was not so blatant as to have denied Grimes fundamental due process.[1] The error likely would have been corrected if it had been pointed out to the trial court. Based on the *Winston* considerations, we conclude that the error does not rise to the level of "fundamental error."

Grimes argues that the trial court erred in instructing the jury that assault and battery with intent to commit a felony is a lesser included offense of the principal charge of statutory rape. The essence of this argument is that assault and battery with intent to commit the felony of rape of a thirteen-year-old girl is essentially the same offense as assault and battery with intent to gratify sexual desires. Grimes argues that, since the two sections contain essentially the same offense, he has been denied due process and equal protection because the punishment for intent to commit a felony (one to ten years) is greater than the punishment for intent to gratify (one to five years).

The basic fallacy undermining the argument presented by Grimes is that intent to gratify and intent to commit the felony of statutory rape are not essentially the same offense. The offense of rape requires actual penetration. The offense of assault and battery with intent to commit the felony of rape requires an intent to rape, that is, an intent to penetrate. The offense of assault and battery with intent to gratify sexual desires does not require an intent to penetrate. One may commit this latter offense by intending to gratify a sexual desire which falls short of an intent to penetrate. There is necessarily overlap in these offenses, but Grimes' contention that the intent to commit a felony statute necessarily allows a greater punish-

---

1. We note that the evidence presented in this case would have supported Grimes' conviction on the principal charge. The victim of the rape identified Grimes and testified that he raped her twice on the same day.

ment for the same offense proscribed in the intent to gratify statute is without merit.[2]

We find no reversible error, and we affirm.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 353 N.E.2d 500.

---

2. It is true that if the felony that the defendant is charged with committing under the assault and battery with intent to commit a felony statute is the felony of assault and battery with intent to gratify sexual desires on a child between the ages of twelve and seventeen, then clearly the sentence imposed may be no greater than the sentence imposed in the statute describing the felony (intent to gratify). In such a case, assault and battery with intent to gratify is the same offense as assault and battery with intent to commit the felony of assault and battery with intent to gratify. This, however, was not the situation in the present case. Grimes was charged with statutory rape. The jury was instructed on the lesser included offense of assault and battery with intent to commit a felony, which felony was statutory rape. No other felony was discussed or mentioned to the trial court, to the defendant, or to the jury.