TYRONE CURTIS HENDERSON *v.* STATE OF INDIANA.

[No. 3-1275A279. Filed July 6, 1977. Rehearing denied August 3, 1977. Transfer denied December 27, 1977.]

---

*James E. Burke,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

STATON, P.J.—After Tyrone Curtis Henderson was convicted of committing a felony while armed, he was sentenced to the Indiana Department of Correction for a period of ten (10) years. In his appeal to this Court, he raises four errors for our review. We have carefully considered these errors, and we find that none of them constitute reversible error. We affirm.

## I.

### Amended Information

On the day before trial began, July 30, 1975, the State was allowed to amend Count Two[1] of the Information by

". . . interlineation by inserting after the word 'While' the following phrase, 'Another person was present, aiding and assisting the commission of such felony and was'."

Henderson contends that the Amended Information placed him in a different defensive posture: the State was not now going to argue that Henderson was holding the dangerous weapon, but rather that another individual was involved and Henderson was present and participated in the crime. Henderson, on July 31, 1975, requested a continuance "for at least a period of one week to properly prepare for trial . . . we feel this [the amendment] has substantially changed the nature of the charges against the defendant. . . ." The motion for a continuance was denied.

The trial court based its denial on lack of surprise; Henderson had knowledge of the police reports which referred to a confederate holding a weapon for "more than seven weeks."

1. Count One was stricken "as duplicity" on the same day.

Henderson agreed that, "It wouldn't change the evidence . . . but [Henderson] was specifically charged with the allegation of one thing and yesterday it was amended to allege another thing."

IC 1971, 35-3.1-1-5 (Burns Supp. 1976) provides in pertinent part:

"(b) The indictment or information may be amended in matters of substance or form by the prosecutor *upon giving notice* to the defendant and with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

\* \* \* \* \* \*

"(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. *Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.*

"(e) *Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated,* or changes the identity of the crime charged; *nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state a crime or legal insufficiency of the factual allegations."* (Emphasis added).

Henderson did not receive actual notice, and his motion for continuance was denied. Additionally, Henderson contends that notwithstanding surprise, the amendment changed the theory of prosecution as originally stated.

We agree with the State that under IC 1971, 35-3.1-1-5 (a) (9) an amendment is allowed at any time for "any . . . defect which does not prejudice the substantial rights of the defendant." We find that Henderson's "substantial rights" were not prejudiced, and, moreover, that the statute does not mandate a continuance.

"Lemont contends that the word 'shall' in the second sentence makes it mandatory, upon defendant's motion, that the trial court order a continuance. It is our view, however, that the implementation of the word 'shall' is contingent upon a determination that such continuation is 'necessary'. Further, it is our view that the integrity of the trial process demands that the trial judge, not a defendant, be the arbiter of what constitutes necessity. It is therefore incumbent upon a defendant to demonstrate to the satisfaction of the trial judge that a continuance is necessary, and we will only reverse the decision of the trial court upon a clear showing of abuse of discretion. . . ." *Lemont* v. *State* (1976), 168 Ind. App. 486, 344 N.E.2d 88, 90.

In examining whether the amendment was a material change which may have prejudiced the substantial rights of Henderson, we are cognizant of the fact that under IC 1971, 35-1-29-1 (Burns Code Ed.), "[e]very person who shall aid or abet in the commission of a felony . . . may be charged . . . tried and convicted in the same manner as if he were a principal. . . ." *Cline* v. *State* (1969), 253 Ind. 264, 252 N.E.2d 793; *Wimes* v. *State* (1974), 160 Ind. App. 218, 311 N.E.2d 459. To *that* extent it *would* be immaterial whether Henderson had held the gun. The denial of the continuance was not prejudicial error.

## II.

### Prosecutorial Misconduct

Henderson directs our attention to four portions of the prosecutor's closing argument. He contends that the prosecutor gave personal opinion of Henderson's guilt to the jury. Henderson's motion for mistrial was denied.

Prosecutorial opinions of a defendant's guilt or innocence are improper and prejudicial unless such opinions include the proviso that they are based solely upon the evidence. *Swope* v. *State* (1975), 263 Ind. 148, 325 N.E.2d 193 (U.S. *cert. denied* 423 U.S. 870); *Garrett* v. *State* (1973), 157 Ind. App. 426, 300 N.E.2d 696. "The line between permissible and impermissible argument is a thin

one. Neither advocate may express his personal opinion as to the justice of his cause or the veracity of witnesses. . . ." *Mayes* v. *State* (1974), 162 Ind. App. 186, 318 N.E.2d 811 at 822.

In his closing argument, the prosecutor expressed disbelief of Henderson's alibi witness and bolstered, by an opinion statement, the credibility of the State's witnesses.

> "Vickie Husband [alibi witness] recalls the date was the 6th, . . . I don't think it was the 6th, if the event she testified to ever happened at all. If they happened, they happened other than on the 6th.
> * * * * *
> ". . . I don't think there is any question whatsoever that those four men in the store recognized Tyrone Henderson then and they recognize him today, and it is one in the same man. I don't think there is even the slightest shade of doubt on that fact."

In addition, the prosecutor commented on Henderson:

> "I think Tyrone is trying desperately to extricate himself from a very unpleasant situation and I think he is playing a little fast and loose with the truth. . . ."

and later,

> "I think Tyrone Henderson was in the store on November 6th. . . ."

And, the prosecutor stated that "Mr. Burke [defense counsel] would characterize Mr. Henderson as a, some kind of a freak or something." To these last statements, Henderson immediately objected.

We note that the existence of prosecutorial misconduct does not necessarily constitute reversible error. *Mayes, supra.*

> "In the absence of a clear showing of prejudice or breach of discretion on the part of the trial court, the judgment will not be set aside because of a

charge of misconduct of counsel." *Soucie* v. *State* (1941), 218 Ind. 215, 219, 31 N.E.2d 1018, 1019. *Robinson* v. *State* (1973), 260 Ind. 517, 520, 297 N.E.2d 409, 411, states that among considerations made in determining the necessity of declaring

a mistrial is "whether there had been a deliberate action on the part of counsel to present the improper matter and whether or not the objectionable testimony or misconduct had been repeated."

When the prosecutor began his closing argument, he addressed the jury by saying,

". . . we [defense counsel and prosecutor] may argue that the evidence showed thus and so and my recollection of the evidence is based pretty much on my notes . . . , but if at any time what I say I believe the evidence showed or what a witness said differs from what your recollection is of what that witness said, then rely on your own recollection rather than mine. . . . [I]f you feel I have misquoted the evidence, rely on your own memories of who said what."

These prefatory remarks were proper, and they demonstrate the lack of deliberate misconduct by the prosecutor. Henderson has made no clear showing of prejudice resulting from the remarks, and though the prosecutor erred in making such statements, any error was harmless.

## III.

### Inference of Flight

Henderson escaped from the St. Joseph County Jail on March 25, 1975, and was apprehended on April 21, 1975. Henderson filed, on July 25, 1975, a Motion in Limine:

"WHEREFORE, counsel for the defendant respectfully requests the Court to instruct the St. Joseph County Prosecutor, any counsel working with him, and his witness, not to mention, refer to, interrogate concerning, or convey in any manner to the jury, either directly or indirectly, any information regarding the alleged escape from the St. Joseph County Jail. . . ."

The Motion in Limine was denied.

After evidence was presented at trial, the State offered the following instruction, which was given by the court:

"STATE'S REQUESTED INSTRUCTION NO. 7 ·
You are instructed that if you find from the evidence that the defendant escaped from the custody of the St. Joseph County Sheriff while being held on this charge, it is a circumstance which you may consider in connection with all the other evidence in determining his guilt or innocence of the crime charged."

Henderson objected to the instruction "on the basis that this is not the law of the State, nor does it apply to the facts of this case and it comments upon evidence in this case which is not material or relevant to any issue in this case."

Henderson presents the denial of the Motion in Limine and the giving of State's Requested Instruction No. 7 as two errors. Since each relates to the issue of flight, we treat them together.

Evidence of flight or escape has been deemed admissible on the issue of guilt. *Layton* v. *State* (1968), 251 Ind. 205, 240 N.E.2d 489; *Thomas* v. *State* (1970), 254 Ind. 561, 261 N.E.2d 224; *Miller* v. *State* (1972), 153 Ind. App. 54, 285 N.E.2d 843. The reasons for escape or flight relate to the weight to be given to the evidence, not its admissibility. *Harms* v. *State* (1973), 156 Ind. App. 123, 295 N.E.2d 156.

Henderson would agree with these holdings. He asserts that his situation is different, however, and he presents a problem which has not before confronted this Court. Henderson had pending, at the time of his escape from the jail, two other felony charges. He argues that admission of the escape evidence was irrelevant since the State did not prove *from which charge* he was escaping. Furthermore, when the court denied the Motion in Limine, the State was able to benefit from the inference of guilt which resulted. Henderson complains that while he could, theoretically, rebut this inference by explaining the reasons for his escape, to do so would necessitate his volunteering evidence of other criminal activity; this would lead to further inferences of guilt and possibly

evidence which could be used by the State in the prosecution of the other charges.

We cannot here presume that Henderson's conviction on the instant charge was based on flight alone. And, the presumption of innocence does not follow a defendant on appeal after conviction, *Coates* v. *City of Evansville* (1971), 149 Ind. App. 518, 273 N.E.2d 862. We would agree that flight *alone* is not a reliable indicium of guilt. *Bradley* v. *State* (1972), 153 Ind. App. 421, 427, 287 N.E.2d 759, 762.

> ". . . The evidentiary value of flight, however, has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as an indicium of guilt. We no longer hold tenable the notion that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' The proposition that 'one who flees shortly after a criminal act is committed or when he is accused of committing it does so because he feels some guilt concerning that act' is not absolute as a legal doctrine 'since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." (Footnotes omitted). (*Quoting from Bailey* v. *United States* [D.C. 1969], 416 F.2d 1110, 1114-15). *Id.*

But the trial court's errors in denying the Motion in Limine and in giving the instruction on flight were harmless in this case because the jury was faced with other evidence which supported the conviction.

Absent a clear showing of prejudice, this Court will not reverse a conviction on appeal. *Grimes* v. *State* (1976), 170 Ind. App. 525, 353 N.E.2d 500. Viewing the entire record, we conclude that the errors which occurred in Henderson's trial were harmless "beyond a reasonable doubt." *Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277, 279.

Judgment is affirmed.

Garrard, J., concurs in result; Hoffman, J., concurs in result with opinion.

## OPINION CONCURRING IN RESULT

HOFFMAN, J.—I concur in the result.

The trial court properly denied the motion in limine and gave "STATE'S REQUESTED INSTRUCTION NO. 7" with regard to escape.

Evidence that there was flight or escape while being held on a charge has always been admissible upon the issue of guilt of the defendant. *Layton* v. *State* (1968), 251 Ind. 205, 240 N.E.2d 489; *Meredith* v. *State* (1966), 247 Ind. 233, 214 N.E. 2d 385; *Anderson* v. *The State* (1886), 104 Ind. 467, 4 N.E. 63.

The fact that defendant was also being confined on other charges does not make evidence of escape inadmissible. To so hold would penalize a defendant confined on one charge and bestow a benefit on a defendant held on multiple charges. Such is not the law.

The trial court did not err in denying the motion *in limine* or giving the instruction.

NOTE.—Reported at 364 N.E.2d 175.